LUBBOCK CIVIL LIBERTIES UNION, Plaintiff-Appellant,

v.

LUBBOCK INDEPENDENT SCHOOL DISTRICT, et al., Defendants-Appellees.

No. 80-2384.

United States Court of Appeals, Fifth Circuit.

July 16, 1982.

Thomas J. Griffith, Ralph H. Brock, Lubbock, Tex., for plaintiff-appellant.

Albach, Gutow, Rosenberg & Blume, Stephen Gutow, Dallas, Tex., Nathan Z. Dershowitz, Amer. Jewish Congress, New York City, amicus curiae.

McWhorter, Cobb & Johnson, D. Thomas Johnson, Charles L. Cobb, Lubbock, Tex., for defendants-appellees.

ON PETITIONS FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

(Opinion March 11, 1982, 5 Cir., 1982, 669 F.2d 1038).

Before POLITZ and RANDALL,* Circuit Judges.

PER CURIAM:

The Petitions for Rehearing are DENIED and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16) the Suggestion for Rehearing En Banc is also DENIED.

death March 4, 1982. The petition for rehearing is being decided by a quorum. 28 U.S.C. 46(d).

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge, with whom CLARK, Chief Judge, GEE and GARWOOD, Circuit Judges, join, dissenting from a Denial of Rehearing En Banc:

I respectfully dissent from the denial of rehearing en banc. The Lubbock Independent School District has made a good faith attempt to enact and enforce a constitutional policy in a critical area. When we strike down a significant part of that policy, we should give that school district, and others, more guidance on what is permissible and impermissible than can be found in the panel opinion.

We can hope that a school district may, with Fifth Circuit approval, allow meetings of students with purposes which include religion, so long as there is no continuing faculty supervision of the meetings, and so long as the meetings are not held at a time closely associated with the school day.

The panel opinion can be construed to go much further. It clearly does require that the school policy be edited so as not to appear to deal separately with students gathering for a religious purpose, although that requirement mystifies me. The school district policy deals with a non-secular topic, as this court does just now, but the provision relative to student meetings—as the ones relative to teaching and printed materials—serves the secular purposes that are approved by the opinion often cited, *Brandon v. Board of Education of Guilderland Central School District*, 635 F.2d 971 (2d Cir. 1980), *cert. denied*, —— U.S. ——, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981).

The panel opinion seems to me either to be misleading or to reflect a misreading of the record. Over the last decade the Lubbock Independent School District has never approved of the practice of a teacher leading classroom prayers, nor did it approve religious assemblies nor sponsor speakers at assemblies because they were evangelists. The intention of the Superintendent of Schools was that the school administration be neutral toward all matters of religion. Corrections were found to be necessary in 1980, but it does not follow that there was any prior disregard on the part of the school administration for the First Amendment.

The panel faults the school district for failing to introduce evidence on the meaning and operation of the 1980 policy. Perhaps the school district attorney thought the policy spoke for itself. Furthermore, there is no adverse evidence in the record, and no witness testified, against the 1980 policy or the brief experience with it. Indeed, the president of the Lubbock Civil Liberties Union, a professor of constitutional law, testified that he thought the new policy was constitutional.

Any disagreement of mine with the panel on the reading of the record would not justify en banc consideration. The following reasons, in my opinion, do so:

1. The panel opinion may be taken to hold that ¶ 4 of the 1980 policy, standing alone, would be a First Amendment violation for any and all public elementary and secondary schools. If this is not the holding, others should be told that the context of policy and prior practice in Lubbock makes the difference. If ¶ 4 is invalid for all, but if changes can be made relative to "supervision" and meeting times ("before or after hours") which would avoid the infirmity, that needs to be stated. On the other hand, if it is to be Fifth Circuit law that students of public schools may not meet in school facilities for religious purposes, the court should leave no doubt about it.

2. At the conclusion of the discussion of the purpose of ¶ 4, the panel says:

   The District's justification for the religious meetings, the development of leadership and communicative skills, cannot withstand scrutiny when those goals can be attained through non-religious student associations.

   669 F.2d at 1045. Perhaps the panel is still concerned here with the separate

policy statement for "religious meetings." If so, the objection could be easily satisfied. But the panel may be saying that permissible secular purposes, the development of leadership and communicative skills, can be attained only through non-religious student associations. I would find that position objectionable because it discriminates against religious belief and speech, and it is inconsistent with *Brandon.*

3. In the discussion of whether the policy advances religion even though the student meetings take place before or after school buses run, the panel finds:

> [T]hat it is the Texas compulsory education machinery that draws the students to school and provides any audience at all for the religious activities, whether the buses have run or the school day has "officially" begun.

And the panel further states:

> [T]he critical factors are the District's use of its compulsory education machinery, which provides students available to attend even voluntary meetings, and its implicit support and approval of the religious meetings.

669 F.2d at 1046. I am unable to understand what the panel considers to be the particular vice. *Brandon* was concerned about the setting of a captive audience and the symbolism for impressionable students where meetings were held during school hours, though before classes began. The panel here appears to be looking at something different, although the objection may be similar. Perhaps the objection is to the machinery of public education that brings the children to *attendance on the school grounds* at a time when a religious meeting is permitted. The rationale of *Brandon* would have some application if that is the objection. But, instead of drawing the students into attendance, the objection may be that the public machinery provides the *students* themselves who get together and make the decision to form some organization to meet at any time, even after they have first departed and then returned to the school building. If the panel objects on the latter basis, I am unable to understand the reason for it.

4. Finally, I cannot be sure what the panel considers to be impermissible entanglement. Perhaps they only object to continuing faculty supervision of the students and the meetings themselves. Or it may be that the panel equates excessive entanglement with the minimal precautions the school would have to take for its property and rules when any student group meets in its facilities. If so, again, we forbid student meetings where there is a religious purpose.

The panel quotes at length from Justice Black's opinion in *Everson.* It should be recalled that the specific holding in *Everson* was that New Jersey had not violated the establishment clause by authorizing local boards of education to reimburse parents for the cost of having the children ride the public buses to school, including to a parochial school. The objective has been neutrality toward believers and nonbelievers. Is neutrality still the objective or is it the fashion now to make the state the adversary of religious belief?

I fully understand and completely agree with Judge Kaufman when he objected in *Brandon* to giving impressionable children the appearance that the state places its imprimatur upon any faith or religious practice. We should not forget, however, that the young student may also be given the impression that our government and the courts and the schools are hostile to all religious belief and practice. I would consider that a very great wrong to the children, to the Constitution and to the nation.