725 F.2d 261
 15 Ed. Law Rep. 1106
 Robert CARTER, Sr., on behalf of Eugene Carter, Robert
Carter, Jr., Lloyd Carter, Ronald Carter, Paul
Carter and Abraham Carter, Plaintiff-Appellant,
v.
ORLEANS PARISH PUBLIC SCHOOLS, Defendant-Appellee.
 No. 83-3150
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 21, 1984.
 
 Robert Carter, pro se.
 Polack, Rosenberg, Rittenberg & Endom, Kenneth F. Sills, New Orleans, La., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, JOLLY and DAVIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Rehabilitation Act of 1973, we hold, affords a personal cause of action not only to persons who are excluded from federally funded programs because they are handicapped but also to those who are excluded because officials have incorrectly classified and treated them as being handicapped when they in fact are not. In this case, however, we find that the parent of children who may once have been improperly treated as being handicapped cannot obtain federal relief for this long-past event. Therefore, notwithstanding the existence of federal jurisdiction, the action must be dismissed for want of a claim for which relief can be granted.
 
 
 2
 Robert W. Carter sued the Orleans Parish School Board in 1983, alleging jurisdiction under Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination against the handicapped in programs that receive federal funding.[1] He alleged that the Board had violated the Act between 1976 and 1978 with respect to each of his six children: one who was not mentally retarded was placed in a class for mentally retarded students without parental consent; two who were tested as normal or having no exceptionality were also placed in such a class without parental consent; and the other three were so placed without testing or the consent of the parents. He sought an injunction prohibiting the School Board from placing any child in classes for the mentally retarded without parental consent, the correction of his children's school records, and $15,000,000 in compensatory damages. The district court dismissed the suit for lack of federal jurisdiction, reasoning that the Rehabilitation Act does not grant a private cause of action for damages.
 
 
 3
 Section 504 protects the rights of handicapped individuals. The Board contends that, because Carter does not allege that any of his children is handicapped and indeed complains of their being treated as if they were, he fails to state a claim for which section 504 grants a cause of action.[2] The Board's interpretation is warranted only if a definition is sought in the dictionary rather than in the statute. For the statute itself defines the term "handicapped individual" to include "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities ... or (iii) is regarded as having such an impairment." 29 U.S.C. Sec. 706(7)(B) (emphasis added). Implementing regulations promulgated by the Department of Health and Human Services explain that a person is "regarded as having such an impairment" if he is treated by a recipient of federal funds as if he were handicapped--regardless of his actual condition. 45 C.F.R. Sec. 84.3(j)(2)(iv)(C) (1981). Unimpaired persons regarded as having an impairment enjoy statutory protection because the erroneous denial of admission into regular classes is one of the abuses Congress sought specifically to correct. S.Rep. No. 94-186, 94th Cong., 1st Sess., at 26, 1975 U.S.Code Cong. & Admin.News, p. 1425. Thus, the good fortune of Carter's children in being normal does not deprive him of standing to sue on their behalf,[3] and we therefore consider his charges, taking each request for relief separately.
 
 
 4
 All of the alleged wrongful acts took place between 1976 and 1978. When the Board's motion to dismiss was being heard by the district court in February 1983, Carter made somewhat equivocal statements on the record implying that, at that time, none of his children remained in classes for the mentally retarded. Nowhere does Carter allege that, in the absence of an injunction, they would likely be placed in such classes again. His claim for affirmative injunctive relief under section 504 is therefore moot. "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 675-76, 38 L.Ed.2d 674 (1974).[4]
 
 
 5
 Carter also requested that "all file materials [be] properly implemented," which we interpret as a request for an injunction requiring the state to expunge from its records any documents classifying the Carter children as mentally retarded. The expungement of records falsely attributing mental retardation to students would be an appropriate ancillary remedy for improper classification and assignment of normal students as handicapped.[5] Like an injunction requiring appropriate reassignment, the correction of records is an equitable remedy designed to correct, not compensate for, the violation, and may be essential to prevent future harm as a result of the original violation. While Carter does not allege that any such documents exist, both the rules of notice-pleading and the liberality accorded pro se litigants require us to assume that the Board has in its files documents recording the children's assignment to classes for the retarded. Though perhaps mistakenly, the Carter children were assigned to and did attend special classes; school officials--and indeed the students themselves--have an important interest in maintaining an accurate historical account of this fact.[6] And we would read too much into Carter's complaint if we were to assume in the absence of allegation that the school maintained and continues to maintain records falsely characterizing the children as mentally retarded. Therefore, the complaint fails to state a claim for which alteration of school records can be ordered.
 
 
 6
 Carter's claim for damages must also fail. The Supreme Court recently examined a private plaintiff's right to damages under Title VI in Guardians Association v. Civil Service Commission, --- U.S. ----, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). Although no opinion commanded a majority, the Court affirmed the Second Circuit's judgment reversing an award of damages to a private plaintiff who had failed to prove intentional discrimination.[7] Section 505 of the Rehabilitation Act, 29 U.S.C. Sec. 794a(a)(2), prescribes for violations of section 504 the same remedies available to redress violations of Title VI. Accordingly, we reasoned in Marvin H. v. Austin Independent School District, 714 F.2d 1348, 1356-57 (5th Cir.1983), that Guardians Association precludes the recovery of damages for an educational placement that violates section 504 unless the misplacement was intentional or manifested some discriminatory animus.
 
 
 7
 Carter has never alleged that the School Board intended to place his children in inappropriate classes or that his children's placement manifested discriminatory animus.[8] His allegations of class assignments contrary to test results and without parental consent or notification, if true, indicate culpability on the part of school officials; the allegations do not, however, eliminate negligence or inadvertence as sources of error and thereby suffice as allegations of intentional discrimination. Guardians Association, then, as interpreted in Marvin H., requires dismissal of Carter's claim for damages.
 
 
 8
 Accordingly, the judgment of the district court dismissing the claim for want of jurisdiction is AMENDED, and the action is DISMISSED for failure to state a claim for which relief can be granted.
 
 
 9
 For these reasons the judgment is AFFIRMED.
 
 
 
 [1]
 The statute, as amended, is codified at 29 U.S.C. Sec. 794 (Supp. V 1981):
 No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....
 
 
 [2]
 That aggrieved persons have a private right of action under section 504 is now well established in this circuit. See Marvin H. v. Austin Indep. School Dist., 714 F.2d 1348, 1356-57 (5th Cir.1983); Helms v. McDaniel, 657 F.2d 800, 806 n. 10 (5th Cir.1981), cert. denied, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); Camenisch v. Univ. of Texas, 616 F.2d 127, 131 (5th Cir.1980), vacated as moot, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)
 
 
 [3]
 In a thoroughly reasoned opinion, Judge Peckham reached the same conclusion in Larry P. v. Riles, 495 F.Supp. 926, 967-68 (N.D.Cal.1979)
 
 
 [4]
 Accord City of Los Angeles v. Lyons, --- U.S. ----, ----, 103 S.Ct. 1660, 1665-70, 75 L.Ed.2d 675, 684-90 (1983); Rizzo v. Goode, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561, 569 (1976); Golden v. Zwickler, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113, 118 (1969). Equitable remedies are available only to counter a "real and immediate threat that the plaintiff will be wronged again." Lyons, --- U.S. at ----, 103 S.Ct. at 1670, 75 L.Ed.2d at 690
 
 
 [5]
 Cf. United States v. McLeod, 385 F.2d 734, 749-50 (5th Cir.1967) (requiring county officials to expunge records of arrest and prosecution in violation of civil rights statutes); Stephen v. Drew, 359 F.Supp. 746 (E.D.Va.1973) (county judge and clerk not immune to suit seeking, inter alia, expunction of records classifying plaintiff as mentally ill)
 
 
 [6]
 Cf. Carter v. Hardy, 526 F.2d 314 (5th Cir.1976) (refusing to order expunction of state record of conviction in absence of allegation that records do not accurately describe historical fact)
 
 
 [7]
 Justices White, Rehnquist, Powell, Burger, and O'Connor voted to affirm the circuit court for different reasons. Justices White and Rehnquist considered that only injunctive, noncompensatory relief is available to remedy unintentional violations of Title VI or its implementing regulations. 103 S.Ct. at 3235. Justices Powell and Burger reasoned that Title VI is not violated by unintentional discrimination (with Justice Rehnquist's concurrence in this conclusion) and that, in any event, the statute is not enforceable by a private right of action against recipients of federal funds. 103 S.Ct. at 3236-37. Justice O'Connor agreed that the statute proscribes only purposeful discrimination. 103 S.Ct. at 3237-38
 
 
 [8]
 Carter did state during a hearing held on the state's motion to dismiss that his children were objects of retaliatory action. This statement will not bear the interpretation, however, that the original misplacements were retaliatory. Rather, it appears that Carter thought his children were currently being mistreated in retaliation for his having initiated this suit