Merritt E. JONES, On His Behalf and as Next Friend of Pamela Jones, A Child, et al., Plaintiffs–Appellants,

v.

CLEAR CREEK INDEPENDENT SCHOOL DISTRICT, Defendant–Appellee.

No. 89–2638.

United States Court of Appeals, Fifth Circuit.

April 18, 1991.

Rehearing Denied May 22, 1991.

Mitchell A. Seider, Bruce V. Griffiths, Greater Houston Chapter, American Civil Liberties Union, Joseph A. Saranello, Houston, Tex., for plaintiffs-appellants.

James D. Robinson, M. Karinne McCullough, Giessel, Stone, Barker & Lymay, David M. Feldman, Vinson & Elkins, Houston, Tex., for defendant-appellee.

Before REAVLEY, GARWOOD and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

Graduating seniors and parents brought this suit to enjoin a school district from permitting invocations and benedictions at public high school graduation ceremonies. The district court held that the school dis-

trict's written policy permitting only nonsectarian and nonproselytizing invocations and benedictions written and delivered by student volunteers at the ceremonies does not violate the Establishment Clause. We affirm.

## I. BACKGROUND

Clear Lake High School ("Clear Lake") is within defendant-appellee Clear Creek Independent School District ("Clear Creek"). Clear Lake traditionally includes in its graduation ceremonies invocations and benedictions [1] voluntarily written and presented by members of the graduating senior class. Pre–1986 Clear Lake graduation invocations included overt references to Christianity. Clear Lake's 1986 graduation invocation mentioned "Lord," "Gospel," "Amen," and God's omnipotence. Two Clear Lake students, joined by their fathers, (collectively "Jones") complained that Clear Creek's policy and actions permitting invocations consisting of traditional Christian prayer at high school graduation ceremonies violated the First Amendment's Establishment Clause.

On December 15, 1987, three weeks before this case was to be tried, Clear Creek's Board of Trustees adopted a resolution (the "Resolution") which provides:

1. The use of an invocation and/or benediction at high school graduation exercise shall rest within the discretion of the graduating senior class, with the advice and counsel of the senior class principal;

2. The invocation and benediction, if used, shall be given by a student volunteer; and

3. Consistent with the principle of equal liberty of conscience, the invocation and benediction shall be nonsectarian and nonproselytizing in nature.

Clear Creek's Board of Trustees adopted the Resolution at the request of its attorney in this case, who drafted it to conform with Judge Merritt's opinion in *Stein v.*

---

1. Any definitional distinction between an invocation and a benediction is irrelevant to this case. We use "invocation" to describe the opening and closing parts of Clear Creek's gradua-

tion ceremonies wherein a student may request a deity's assistance or blessing. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 143 (1985) (defining benediction in terms of invocation).

*Plainwell Community Schools,* 822 F.2d 1406, 1409 (6th Cir.1987) (analogizing to the Supreme Court's approval of legislative prayer in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) in holding that nonsectarian, nonproselytizing graduation prayer does not violate the First Amendment).

Applying the tripartite test announced in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), Judge DeAnda held that the Establishment Clause does not prohibit Clear Creek from permitting invocations that conform with the Resolution, and granted summary judgment for Clear Creek.

## II.  ANALYSIS

Jones claims that the Resolution is a facially unconstitutional law respecting an establishment of religion.  Alternatively, she asserts that the district court prematurely granted summary judgment without giving her an opportunity to discover whether Clear Creek would enforce the Resolution in a constitutional manner.

### A.  THE RESOLUTION'S CONSTITUTIONALITY

#### 1.  *Establishment Clause Applicability*

■ The First Amendment's proscription of laws "respecting an establishment of religion" applies to state governments through the Fourteenth Amendment.  *Everson v. Board of Education of Ewing Township,* 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947).  Because Clear Creek's Board of Trustees promulgated the Resolution pursuant to authority conferred by Texas law, the Resolution is subject to Establishment Clause scrutiny.  *Board of Education, Island Trees Union Free School Dist. v. Pico,* 457 U.S. 853, 864, 102 S.Ct. 2799, 2806–07, 73 L.Ed.2d 435 (1982).

■ The Resolution does not escape Establishment Clause scrutiny by only passively limiting students' free choice of graduation speech content.  True, the Resolution contemplates invocations written and delivered by student volunteers only with the approval of the graduating senior class.  But, according to Clear Creek's May 1987 letter to parents, "commencement is a scheduled school activity, and all school regulations [are] enforced."  Clear Creek undisputably controls its commencement programs.  Clear Creek's rental of an auditorium is tantamount to ownership for purposes of facility control.  And " 'the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated' " ... "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983) (quoting *United States Postal Service v. Council of Greenburgh Civic Assns.,* 453 U.S. 114, 129–30, 101 S.Ct. 2676, 2684, 69 L.Ed.2d 517 (1981)).

■ The Resolution is subject to Establishment Clause scrutiny because it is the mechanism through which the state provides space in a closed forum for arguably religious speech at a government sponsored event.  *See Engel v. Vitale,* 370 U.S. 421, 430, 82 S.Ct. 1261, 1266–67, 8 L.Ed.2d 601 (1962) (noncompulsory nature of public school prayer does not "free it from the limitations of the Establishment Clause"); *Jager v. Douglas County School Dist.,* 862 F.2d 824, 831 (11th Cir.) (considering Establishment Clause challenge "[w]hen a religious invocation is given via a sound system controlled by school principals and the religious invocation occurs at a school-sponsored event at a school-owned facility"), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Stein,* 822 F.2d at 1407 (recognizing Establishment Clause challenge where graduation invocations voluntarily written and presented by students).

The Resolution also involves Clear Creek in graduation invocations by subjecting proposed invocations to review by the "senior class principal," a faculty representative of a class throughout its four-year attendance at school.

### 2. Test of Constitutionality

█ The parties argued the Resolution's constitutionality under *Marsh* while the district court applied *Lemon* in deciding Clear Creek's summary judgment motion. Judges of the other two circuits considering the constitutionality of invocations at public high school graduation ceremonies have demonstrated some disagreement on the test to be applied. *Compare Weisman v. Lee,* 728 F.Supp. 68, 71–75 (D.R.I.), *aff'd,* 908 F.2d 1090 (1st Cir.1990) (applying *Lemon* ), *cert. granted,* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991) *with Stein,* 822 F.2d at 1409 (one judge analogizes to *Marsh* and the other two judges apply *Lemon* as well).

The writer of this opinion is inclined to the opinion that present Supreme Court decisions require that the Resolution satisfy *Lemon*. The Supreme Court has "particularly relied on *Lemon* in every case involving the sensitive relationship between government and religion in the education of our children." *Grand Rapids School Dist. v. Ball,* 473 U.S. 373, 383, 105 S.Ct. 3216, 3222, 87 L.Ed.2d 267 (1985); *see also id.* ("reaffirm[ing] that state action alleged to violate the Establishment Clause should be measured against the *Lemon* criteria"); *Wallace v. Jaffree,* 472 U.S. 38, 63, 105 S.Ct. 2479, 2493, 86 L.Ed.2d 29 (1985) (Powell, J., concurring) (extolling *Lemon*'s analytical usefulness in deciding constitutionality of silent prayer in public schools).

In *Marsh,* the Court upheld the Nebraska legislature's practice of paying a Christian chaplain to begin sessions with an invocation due to the historical acceptance of this practice since our ancestors declared independence from England. 463 U.S. at 792, 103 S.Ct. at 3336. But the Court has later said that

> [s]uch a historical approach is not useful in determining the proper roles of church and state in public schools, since free public education was virtually nonexistent at the time the Constitution was adopted.

*Edwards v. Aguillard,* 482 U.S. 578, 583 n. 4, 107 S.Ct. 2573, 2577 n. 4, 96 L.Ed.2d 510 (1987).

### 3. Lemon *Application*

#### a. Purpose

█ Clear Creek satisfies *Lemon*'s first prong by showing that the Resolution has "a secular purpose." 403 U.S. at 612–13, 91 S.Ct. at 2111. Clear Creek's Trustees need not have enacted the Resolution in furtherance of exclusively secular objectives. *Lynch v. Donnelly,* 465 U.S. 668, 681 n. 6, 104 S.Ct. 1355, 1363 n. 6, 79 L.Ed.2d 604 (1984); *accord Wallace,* 472 U.S. at 56, 105 S.Ct. at 2489. Though, "[w]hile the Court is normally deferential to a State's articulation of a secular purpose, it is required that the statement of such purpose be sincere and not a sham." *Edwards,* 482 U.S. at 586–87, 107 S.Ct. at 2579.[2]

---

**2.** We believe that the Supreme Court's requirement of an actual secular purpose encompasses the allusions in prior cases to requirements of secular purpose preeminence. Justice O'Connor recently elaborated on *Lemon*'s purpose test:

the inquiry into the purpose [behind challenged state action] should be deferential and limited.... Even if the text and official history of a statute express no secular purpose, the statute should be held to have an improper purpose only if it is beyond purview that endorsement of religion or a religious belief "was and is the law's reason for existence."

*Epperson v. Arkansas,* 393 U.S. 97, 108, 89 S.Ct. 266, 272, 21 L.Ed.2d 228 (1968).

... I have little doubt that our courts are capable of distinguishing a sham secular purpose from a sincere one, or that the *Lemon* inquiry into the effect of an enactment would help decide those close cases where the validity of an expressed secular purpose is in doubt.

While the secular purpose requirement alone may rarely be determinative in striking down a statute, it nevertheless ... reminds government that when it acts it should do so without endorsing a particular religious belief or practice that all citizens do not share.

*Wallace,* 472 U.S. at 75–76, 105 S.Ct. at 2499–500 (O'Connor, J., concurring in judgment). A majority of the Court cites Justice O'Connor's *Lemon* purpose analysis in *Edwards,* 482 U.S. at 587, 107 S.Ct. at 2579.

As articulated by Justice O'Connor above and the majority opinions in *Lynch, Wallace,* and *Edwards, Lemon*'s purpose prong does not require a determination of whether challenged state action has a greater secular or religious purpose. The opinions that strike down legislation as having a "primary" or "preeminent" religious purpose do so only after analyzing each secular purpose claimed by the state and finding each illusory. *See, e.g., Edwards,* 482 U.S. at

Clear Creek contends that it includes invocations in its graduation ceremonies to solemnize these occasions. Justice O'Connor recognizes that such "government acknowledgments of religion serve, in the only ways reasonably possible in our culture, the legitimate secular purpose[ ] of solemnizing public occasions." *Lynch*, 465 U.S. at 693, 104 S.Ct. at 1369 (O'Connor, J., concurring in the judgment); *accord County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 109 S.Ct. 3086, 3102 n. 46, 106 L.Ed.2d 472 (1989); *Stein*, 822 F.2d at 1409; *Weisman*, 908 F.2d at 1095 (Bownes, J., concurring).

Jones asserts that Clear Creek's solemnization rationale is only a pretext for the Resolution's introduction of prayer into public schools. But unlike the plaintiffs in *Wallace*, *Edwards*, or *Lubbock*, Jones offers no evidence of religious motivation through legislative history or overt religious references in the Resolution. In fact, through its student option, and the nonproselytization and nonsectarian mandates, the Resolution deemphasizes the religious significance of allowed invocations.

While the Resolution apparently tolerates invocations addressing a deity, we think that this is as consistent with the secular solemnizing purpose as any religious purpose. It is precisely in acknowledging a principle of transcendence, with simple terms of universal understanding— like "God"—that graduation attendees may perceive the profound social significance of the occasion. It is not implausible that Clear Creek's Trustees intended the Resolution to foster just such a perception in many, if not most, attendees. The Resolution's "reason or effect merely happens to

coincide or harmonize with the tenets of some ... religions." *Lynch*, 465 U.S. at 682, 104 S.Ct. at 1364 (citation omitted). We reject a reading of the First Amendment that would freeze either church and state or religion and politics into perpetually antagonistic postures.

Jones argues that Clear Creek may not employ religious means to accomplish goals that can be attained by nonreligious means. *See Lubbock*, 669 F.2d at 1045. This court has even held that a statute cannot employ an obvious religious means to serve otherwise legitimate secular interests. *Karen B. v. Treen*, 653 F.2d 897, 901 (5th Cir. 1981), *aff'd*, 455 U.S. 913, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1982). But to say that the Resolution employs a "religious means" is to confuse purpose and effect analyses under *Lemon*. Unlike the laws at issue in *Lubbock* and *Treen*, the Resolution takes no position on whether a proposed invocation references a deity, and only seeks to limit sectarianism and proselytization. The Resolution does not employ an obviously religious means to solemnize Clear Creek graduation ceremonies.

Moreover, we are unaware of an exclusively secular equivalent for Clear Creek's solemnization choice. *See Lynch*, 465 U.S. at 716–17, 104 S.Ct. at 1382 (Brennan, dissenting) (as "ceremonial deism," invocations are "uniquely suited to serve such wholly secular purposes as solemnizing public occasions"). Jones offers no solemnization substitute other than a valedictory address, which Clear Lake supplemented in its 1986 program with an invocation. We do not consider invocations such as the 1987 proposal approved by Jones[3] any more secular for veiling references to a deity in pronouns and hidden objects.

585–94, 107 S.Ct. at 2578–83; *Stone v. Graham*, 449 U.S. 39, 41–42, 101 S.Ct. 192, 194, 66 L.Ed.2d 199 (1980); *Lubbock Civil Liberties Union v. Lubbock Independent School Dist.*, 669 F.2d 1038, 1044 (5th Cir.), *reh'g denied*, 680 F.2d 424 (1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983).

That the *Lemon* Court required "a" secular purpose along with a "primarily" nonreligious effect further convinces us that we need not divine a state's primary purpose in promulgating a challenged law. *See Lemon*, 403 U.S. at 612–13, 91 S.Ct. at 2111.

3. Jones agreed that the following invocation is not offensive:

We ask that the people gathered here today be grateful for the faculty, the administration, and the students of Clear Lake High School. We are most thankful to live in a country which stresses the importance of individual freedom. Thank you for this wonderful year, for the friendship and fellowship that has grown among us, and for the memories that we will cherish forever. Thank you for our past experience, and please, help us all to be successful in the future.

Because Clear Creek has a secular purpose for allowing invocations at its graduations, we agree with the district court that the Resolution satisfies *Lemon*'s first prong as a matter of law.

### b. Effect

Jones urges us to follow *Weisman*, 728 F.Supp. at 73, in holding that the primary effect of nondenominational prayer at a voluntarily attended public high school graduation ceremony is to advance religion in contravention of *Lemon*'s second proscription. But

> [r]ather than mechanically invalidating all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith—as an absolutist approach would dictate—the Court [mandates scrutiny of] challenged legislation or official conduct to determine whether, in reality, it establishes a religion or religious faith, or tends to do so....
>
> In each case, the inquiry calls for line-drawing; no fixed, *per se* rule can be framed.... The purpose of the Establishment Clause "was to state an objective, not to write a statute." ... The Clause erects a "blurred, indistinct, and variable barrier *depending on all the circumstances of a particular relationship.*"

*Lynch*, 465 U.S. at 678, 104 S.Ct. at 1361–62 (quoting *Walz v. Tax Commission of City of New York*, 397 U.S. 664, 688, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970) and *Lemon*, 403 U.S. at 614, 91 S.Ct. at 2112) (emphasis added). The facts here differ from those in *Weisman*, and we conclude that the Resolution's primary effect is not to advance or endorse religion.

Constitutional examples of governmental religious accommodation abound. Nebraska may pay a Protestant chaplain to open its legislature's daily sessions with an invocation. *Marsh*, 463 U.S. at 795, 103 S.Ct. at 3338. Our statutorily prescribed national motto is "In God We Trust." 36 U.S.C. § 186. The Pledge of Allegiance, recited daily by thousands of public school children, describes us as "One nation under God." *Lynch*, 465 U.S. at 676, 104 S.Ct. at 1361. We even begin each public hearing in federal court with the invocation "God save the United States and this Honorable Court."

The principal difference between the legislative prayer approved in *Marsh* and any prayer sanctioned by the Resolution is that the latter occurs during a public school function. We recognize that we are to be

> particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools. Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family. Students in such institutions are impressionable and their attendance is involuntary.

*Edwards*, 482 U.S. at 583–84, 107 S.Ct. at 2577; *see also Lubbock*, 669 F.2d at 1043 (explaining special concern for governmental religious neutrality in public schools).

Yet the students affected by the Resolution are the least impressionable people receiving special protection from religious inferences under the Supreme Court's school prayer decisions. The graduation ceremony lies on the threshold of high school students' transitions into adulthood, when religious sensibilities hardly constitute impressionable blank slates. All of the students will have seen United States currency, and many will have witnessed judicial or legislative proceedings. Given *Marsh*, these students enter an adult world in which they are expected to tolerate some governmental accommodation of religion.

In determining the Resolution's primary effect, we focus on an invocation's effect in the context of an entire graduation ceremony. *Lynch*, 465 U.S. at 679–80, 104 S.Ct. at 1362 ("[f]ocus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause"). Several characteristics combine to distinguish the Resolution's invocations from the school prayer stricken in *Engel, Stone, Wallace, Treen, Jager*, and possibly *Weisman*. While striking down a New York regulation prescribing a daily prayer for recitation by public school

children, the Supreme Court even notes that

> [t]here is of course nothing in the decision reached here that is inconsistent with the fact that *school children and others* are officially encouraged to express love for our country by reciting historical documents such as the Declaration of Independence which contain references to the Deity or by singing officially espoused anthems which include the composer's professions of faith in a Supreme Being, or with the fact that there are many manifestations in our public life of belief in God. Such patriotic or *ceremonial* occasions bear no true resemblance to the unquestioned religious exercise that the State of New York has sponsored in this instance.

*Engel,* 370 U.S. at 435 n. 21, 82 S.Ct. at 1269 n. 21 (emphasis added).

Most students witness the invocations sanctioned by the Resolution once in four years, as opposed to daily or weekly. Consistent with the Resolution's nonproselytization requirement, the invocations are historically brief—under one minute. Students deliver the invocations in an assembly where many parents are present rather than a classroom setting, where the prospect of subtle official and peer coercion warrants stricter separation of the state from things religious.

Nor do we overlook Clear Creek's passive role in the invocation inclusion process. The Resolution facilitates invocations, but it leaves their existence, and reference to a deity, to the discretion of each graduating class and student volunteer. And

> to have forbidden "effects" under *Lemon,* it must be fair to say that the *government itself* has advanced religion through its own activities and influence. As the Court observed in *Walz,* "for the men who wrote the Religion Clauses of the First Amendment the 'establishment' of a religion connoted sponsorship, financial support, *and active involvement* of the sovereign in religious activity." 397 U.S., at 668, 90 S.Ct., at 1411.

*Corp. of Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v.*

*Amos,* 483 U.S. 327, 337, 107 S.Ct. 2862, 2869, 97 L.Ed.2d 273 (1987) (emphasis added). Clear Creek's passive role distinguishes the state-sanctioned, officially written prayers stricken in *Engel.*

■ While a law's denominational neutrality and voluntary observance provisions are not enough alone to "free it from the limitations of the Establishment Clause," *Engel,* 370 U.S. at 430, 82 S.Ct. at 1266–67, these factors in concert with the others specified above mollify any advance or endorsement of religion consistent with the Resolution.

We think that the Resolution allows invocations to enhance the significance of graduation to attendees while minimizing any governmental advancement or endorsement of religion. The Resolution no more advances or endorses religion than the myriad of constitutional public religious accommodations cited above; given its solemnization function, the Resolution has a legitimate primary effect. *Accord Stein,* 822 F.2d at 1409 (approving nonsectarian public high school graduation invocations for solemnization purposes); *Bogen v. Doty,* 598 F.2d 1110, 1114 (8th Cir.1979) ("we suggest that establishing solemnity is the primary effect of all invocations at gatherings of persons with differing views on religion").

#### c. Entanglement

Jones argues that the Resolution's provision that invocations be nonsectarian and nonproselytizing constitutes an excessive entanglement of government and religion in violation of *Lemon's* third proscription. We disagree.

"Entanglement is a question of kind and degree." *Lynch,* 465 U.S. at 684, 104 S.Ct. at 1365. Even if school officials review voluntarily submitted invocations for sectarianism and proselytization,[4] any entanglement that this fosters is not constitutionally excessive. Such review must occur before the graduation ceremony, so the Resolution does not mandate the "continuing supervision of nonsecular activity" proscribed in *Lubbock. See* 669 F.2d at 1047 (school official monitoring of religious

---

**4.** The Resolution's third proviso may be understood as either an admonition to those student

meetings excessive entanglement). In accordance with Jones' complaint, we consider the "activity" at issue here the invocation's delivery and not its approval and acceptance into the graduation program.

In his *Weisman* concurrence, Judge Bownes writes that an invocation policy in which speakers are chosen by the school district and given guidelines suggesting the content of prayers violates *Lemon*'s entanglement prong. 908 F.2d at 1095; *cf. Jager*, 862 F.2d at 831 (no entanglement when school does not choose invocation speaker or monitor content). The Resolution does not involve Clear Creek in choosing among those wishing to prepare and present graduation invocations, and Jones presents no evidence that Clear Creek is so involved. As for invocation content, the Resolution proscribes certain types of invocations without prescribing any invocation. We think that Clear Creek seeks to solemnize its graduation ceremonies in a manner most acceptable to all attendees, and in doing so may constitutionally pre-screen proposed invocations for sectarianism and proselytization.

The Supreme Court has only held state action unconstitutional under *Lemon*'s entanglement prong when it has found excessive entanglement between governmental and religious institutions. *See Lynch*, 465 U.S. at 684, 104 S.Ct. at 1365 ("no evidence of contact with church authorities concerning the content or design or the exhibit prior to or since [city's] purchase of the crèche"); *Larkin v. Grendel's Den*, 459 U.S. 116, 126–27, 103 S.Ct. 505, 511–12, 74 L.Ed.2d 297 (1982) (zoning ordinance allowing churches veto power over certain liquor licenses unconstitutional entanglement); *Lemon*, 403 U.S. at 625, 91 S.Ct. at 2117 (state salary supplements to teachers of secular subjects in parochial schools excessive entanglement); *Walz*, 397 U.S. at 674–75, 90 S.Ct. at 1414 (New York may constitutionally exempt religious organizations from real property tax).

Justice O'Connor states the proposition directly: "[t]he entanglement prong of the *Lemon* test is properly limited to institutional entanglement." *Lynch*, 465 U.S. at 689, 104 S.Ct. at 1368 (O'Connor, J., concurring); *accord* Smith, *Separation and the "Secular": Reconstructing the Disestablishment Decision*, 67 Tex.L.Rev. 955, 971–75 (1989) (arguing that the original disestablishment decision sought to separate the institutions of church and state).

By requiring that invocations be nonsectarian and written and presented by student volunteers, the Resolution effectively excludes religious institutions from its purview. Such exclusion renders entanglement impossible under Justice O'Connor's statement of *Lemon*'s third test.

Thus, because the Resolution has a secular solemnizing purpose and primary effect, and does not excessively entangle Clear Creek with religion, we agree with the district court that the Resolution does not violate the Establishment Clause.

**B. DISCOVERY ADEQUACY**

■ Jones does not complain of any language included in a Clear Creek graduation ceremony after 1986 and agrees that the 1987 invocation was not offensive. Yet she asserts that the district court prematurely granted summary judgment based on the Resolution's constitutionality without giving her an opportunity to depose Clear Creek officials and discover whether Clear Creek would constitutionally apply the Resolution. Jones characterizes the Resolution as Clear Creek's last minute attempt to dodge an injunction given its pre–1987 blatantly sectarian invocations.

■ Injunctive relief is inappropriate when sought to prevent injury that is speculative at best. *Carter v. Orleans Parish Public Schools*, 725 F.2d 261, 263 (5th Cir. 1984). Even where school districts have "*very reluctantly* complied with constitutional standards," this court has twice refused to reverse a district court's denial of equitable relief. *See Lubbock*, 669 F.2d at 1049 (emphasis in original); *Meltzer v. Board of Public Instruction of Orange County, Florida*, 548 F.2d 559, 568 (5th

volunteers writing the invocations or as a mandate that school officials review proposed invo-

cations for sectarianism or proselytization.

Cir.1977), *aff'd on rehearing*, 577 F.2d 311 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). We find no abuse of discretion, *see United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), in the district court's final denial of injunctive and declaratory relief in this case.

## III.  CONCLUSION

Because the Resolution does not violate the Establishment Clause and the district court did not abuse its discretion in denying Jones equitable relief based on Clear Creek's pre-Resolution actions, we AFFIRM.

GARWOOD, Circuit Judge, with whom BARKSDALE, Circuit Judge, joins specially concurring.

The district court applied the tripartite test of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), and upheld the school district's policy. Appellants do not argue that some other test should be applied, but rather contend that *Lemon* controls and that the policy fails to meet *Lemon*'s requirements. Appellees defend the policy under *Lemon* and also rely on *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). Judge Reavley's opinion convincingly demonstrates that *Lemon* is satisfied, and we completely agree. Moreover, in the present context, it seems apparent that *Lemon* poses the challenged policy's highest hurdle, and if it clears *Lemon* then it passes establishment clause muster under any reasonably conceivable test. Accordingly, we join in so much of Judge Reavley's opinion as deals with whether

the policy is constitutional under *Lemon*, but without reaching the question of whether some less restrictive or rigid test might be more properly applied in this setting.[1] That is a matter on which the Supreme Court may well further enlighten us before long.  *See Weisman v. Lee*, 908 F.2d 1090 (1st Cir.1990), *cert. granted* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991).

---

**1.** In *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984), the Court observed that "we have repeatedly emphasized our unwillingness to be confined to any single test or criteria in this sensitive area." There are good arguments why a case of this kind might be better analyzed under *Marsh*, or some variant thereof, than under *Lemon*. *See Jager v. Douglas County School District*, 862 F.2d 824, 836–838 (11th Cir.1989) (dissenting opinion of Chief Judge Roney); *Stein v. Plainwell Community Schools*, 822 F.2d 1406, 1409–10, 1412–15 (6th Cir.1987) (opinions of Judges Merritt and Wellford); *Weisman v. Lee*, 908 F.2d 1090, 1098–99 (1st Cir.1990) (dissenting opinion of

Judge Campbell), *cert. granted* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991). It also appears to us that the force of certain of our precedents in this area, particularly *Lubbock Civil Liberties Union v. Lubbock Independent School District*, 669 F.2d 1038 (5th Cir.), *reh'g denied*, 680 F.2d 424 (1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983), may have been called into question by *Board of Education of Westside Community Schools v. Mergens*, —— U.S. ——, 110 S.Ct. 2356, 2366, 2370–73, 110 L.Ed.2d 191 (1990). Where that might lead were the policy at issue here somewhat different likewise need not be reached.