**Sally GRIFFITH, Plaintiff,**

v.

**Ralph TERAN, Principal of Wichita North High School and Unified School District 259, Defendants.**

Civ. A. No. 92–1278–B.

United States District Court, D. Kansas.

May 29, 1992.

James S. Phillips, Jr., Phillips & Phillips, Chartered, Wichita, Kan., for plaintiff.

Thomas R. Powell, Hinkle, Eberhart & Elkouri, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

Presently before the court is the motion of plaintiff for a temporary restraining order and preliminary injunction. In this action, plaintiff asks the court to rule that an invocation and benediction at a high school graduation ceremony violate the Establishment Clause of the First Amendment to the United States Constitution.

This action was filed on May 27, 1992. The specific relief requested in the instant motion is an order enjoining the delivery of an invocation and benediction at a graduation ceremony scheduled for this evening, May 29. The court held a hearing on the motion on May 28. Having heard testimony, received exhibits and considered the parties' arguments, the court is prepared to rule.

I. *Background*

Plaintiff is an eighteen year old graduating senior at Wichita High School North. She attended the graduation ceremony of North High School in 1991 and was present when defendant Teran announced that there would be an invocation and benediction. The invocation, delivered by an Hispanic student, made various references to

"Heavenly Father," "Great Spirit," and "Lord."[1] Plaintiff testified that the 1991 benediction made similar references to a deity and concluded with the word "Amen." Plaintiff also testified that a "contemporary Christian song" as well as "The Battle Hymn of the Republic" was sung, which made further reference to "the Lord" and "Christ." Plaintiff found the invocation and benediction offensive and inappropriate to a function for a public school, particularly in light of the diverse cultural groups that attend North High School. Plaintiff also testified that she felt insulted.

Defendant Teran is the principal of North High School. Teran testified that as in all previous years, an invocation and benediction is planned for the graduation ceremony this evening. The ceremony will not take place at North High School but at a local convention center. As in previous years, students will deliver the invocation and benediction. Students are selected by members of the school administration form a diverse cross-section of the student body. They are selected without regard to religious beliefs or preferences. The students selected are counseled only to speak in non-sectarian, non-doctrinal, and non-proselytizing terms. However, Teran allows the students to compose the prayer "in their own voice," based on their own experience.

Teran further testified that the invocation this year will be made by a student of Vietnamese heritage who is of the Buddhist faith.[2] The benediction will be given

1. The text of the 1991 invocation reads:

Oh Heavenly Father
bless us your children
as we sit around the
bone white moon
Hear us now as we
turn to your face
look behind our words
as we pray
Give us what is pure
bring us from the
half sound
Holy Spirit of no place
forever soul
Pity me
Give me light
Prairie wind
let your midnight
song find me among
blessed ones
Sound of my father
I pray
Bring peace to all Nations
Great Spirit
now we are one
long have we suffered
without your wisdom
I listen to the river of
ghosts and weep for my
brothers who call through
the wind
It is good to see you
sitting among them
Our smoke has gone
four ways, it call [sic] for us
My brothers smile with tears
we may never meet again
Eagle of fire whose
wings are scented cedar
moon of forever who
guards the sacred seed
Keep us strong to meet
the coming days.

Oh Heavenly Father,
As the brilliant colors
of the sunset deepen and fade
into the horizon never let the
memories that we have made
together fade.
Bless each one of us as we set
out on the next leg of our journey
through life.
Bless us that no matter where we
go or what we do, that we the
Class of 1991, remember the good
times, the bad times, and the
precious friendships that we have
made along the way.
Bless our families, friends,
administration, and teachers for
all the love, support, courage
and knowledge that they have so
graciously shared with each one
of us.
Lord, Bless this Senior Class of
1991 and give us the courage to
walk tall as the trees, live
strong as the mountains, and
cherish the moments that we have
shared together.
AMEN

2. The text of his expected invocation reads:

Let us pray for [a] moment.
Oh Mighty Lord, we gather here today to give thanks to you. You have been with us every second of our lives. You give us the pain so we can gain. If there is no struggle, there is no progress.
Bless the teachers, the parents, the principals, and those who encourage the students to study. Lord, you have accompanied us this far. Please put your arms around us and help us succeed in goals.
Let there be more doctors, teachers, lawyers, policemen, and workers who make the world a better place to live. We have hope in

by another student.[3] Teran has reviewed the texts of this year's invocation and benediction and finds that they are acceptable. Teran stated that allowing an atheist or an agnostic to compose and deliver the invocation or benediction would also be consistent with the purpose of these portions of the graduation program. According to Teran, the purpose of the invocation and benediction is to give a "solemn sense" to the graduation ceremony and to promote understanding and brotherhood among people with different experiences and background. Teran further stated that it was not the purpose of the invocation or benediction to endorse or advance religion. Attendance at the graduation exercise is not mandatory and is not a condition to receiving the diploma.

## II. *Analysis*

■ Since 1971, constitutional challenges under the Establishment Clause have been subjected to the three-part test of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The *Lemon* analysis imposes three restrictions on governmental action: "(1) it must have a secular purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) it must not foster an excessive entanglement with religion." *Id.* at 612–13, 91 S.Ct. at 2111. "State action violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987).

The Supreme Court has "particularly relied on *Lemon* in every case involving the sensitive relationship between government and religion in the education of our children." *School Dist. of the City of Grand Rapids v. Ball*, 473 U.S. 373, 383, 105 S.Ct. 3216, 3222, 87 L.Ed.2d 267 (1985). The

---

your challenge. Let our dream stay alive. Amen.
(Defendants' Ext. D–3).

**3.** The proposed benediction reads:

Three years ago we entered the halls of North High unaware of the changes that were going to take place in our lives. An [sic] as I look back over the last three years, I, like my fellow classmates, have a great deal of wish [sic] we must give thanks.

To the greatest teachers not only in Wichita, but in the WORLD. You took time out of your always busy schedule to provide additional help in both overcoming the academic challenges and those we faced in our personal lives. We would like to say thanks.

To the coaches. You provide us with the opportunity to compete against our peers throughout the city and the state. You my [sic] not be aware of this, but you became a very important part of our lives. In some cases you and the other students became our extended family. For these things and others, we would like to give you thanks.

To the counselors, the principles, the secretaries, the security guards, and rest of the support staff. You provided guidance, discipline, help, support and care. We give you thanks.

To the parents. Yes the most important part of us. You can never be shown the amount of love we feel for you. You were by our sides through thick and thin, although we kept you up at night waiting for us to come home safely. An [sic] even if we argued about our rights, you listened to our side of the story and then told us what was right.

We not only want to give you thanks, but to say that we love you more than you could ever imagine.

I would like to share with you the words of a Pueblo poet, Nancy Wood, from her book "Many Winters".

A long time I have lived with you
And now we must be going
Separately to be together.
Perhaps I shall be the wind
To blur your smooth waters
So that you do not see your face too much.
Perhaps I shall be the star
To guide your uncertain wings
So that you have direction in the night.
Perhaps I shall be the fire
To separate your thoughts
So that you do not give up.
Perhaps I shall be the rain
To open up the earth
So that your seed may fall.
Perhaps I shall be the snow
To let your blossoms sleep
So that you may bloom in spring.
Perhaps I shall be the stream
To play a song on the rock
So that you are not along [sic].
Perhaps I shall be a new mountain
So that you always have a home.
We have a new mountain to climb as we depart tonight, but one thing is for certain. North High will always be our home.

In closing I would like to give Thanks to GOD for watching over us during our stay at North. May his light continue to shine through us foreve [sic].
(Defendant's Ext. D–2)

unique circumstances motivating this special attention to public schools were aptly stated in *Edwards v. Aguillard:*

> Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family. Students in such institutions are impressionable and their attendance is involuntary. The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure. Furthermore, "[t]he public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny. In no activity of the State is it more vital to keep out divisive forces than in its schools...."

482 U.S. at 583–84, 107 S.Ct. at 2577 (citations omitted). Accordingly, the Court has struck down state statutes that required a recitation of "denominationally neutral" prayer in public elementary and secondary schools, *Engel v. Vitale*, 370 U.S. 421, 430, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962); required daily readings without comment from the Bible, *Abington School Dist. v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); prohibited the teaching of evolution, *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); required the posting of a copy of the Ten Commandments on the wall of each public classroom, *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980); required a moment of silence in public schools, *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); and required that public schools give a "balanced treatment" to "creation science" and "evolution science," *Edwards*, 482 U.S. 578, 107 S.Ct. 2573.

In all of these instances, however, the unconstitutional state action went to the heart of the public school system: the classroom. For several reasons, the court perceives a clear and meaningful distinction between a ceremonial reference to the deity at high school graduations activates, as opposed to the infusion of religious elements into the educational environment.

Attendance at the graduation ceremony of North High School is not mandatory; nor is it required in order to receive the diploma. Moreover, students and younger family members attending such ceremonies are most often accompanied by their parents, whose presence may be expected to mitigate any "coercive power" that might otherwise be present. *See Stein v. Plainwell Community Schools*, 822 F.2d 1406, 1409 (6th Cir.1987) ("the public nature of the [graduation] proceeding and the usual presence of parents act as a buffer against religious coercion").

But perhaps most significantly, a graduation ceremony—unlike the classroom—does not attempt to educate. Its purpose is to commemorate the achievement of 12 years of education. In addition, it cannot be denied that the graduation exercise possess overtones of an initiation, formally marking the transition from a student/adolescent to an adult.[4] *See Jones v. Clear Creek Independent School Dist.*, 930 F.2d 416, 421 (5th Cir.1991) ("The graduation ceremony lies on the threshold of high school students' transitions into adulthood, when religious sensibilities hardly constitute impressionable blank slates.") This distinction has constitutional significance for the same reason that "[t]he potential for undue influence is far less significant with regard to college students who voluntarily enroll in courses." *Edwards*, 482 U.S. at 584 n. 5, 107 S.Ct. at 2577 n. 5. It is the "undue influence" on a captive audience composed of young, developing, and susceptible minds that has prompted the Supreme Court to give special scrutiny to religious influences in the elementary and secondary public schools. *See Albright v. Board of Education*, 765 F.Supp. 682, 691 & n. 21 (D.Utah 1991) (quoting *Widmar v.*

---

**4.** This status is further reflected in the fact that plaintiff, who has reached the age of majority in Kansas, is authorized to bring this action in her own name. *See* Fed.R.Civ.P. 17(b); K.S.A. § 38–101.

*Vincent,* 454 U.S. 263, 264, 102 S.Ct. 269, 271, 70 L.Ed.2d 440 (1981) and *Board of Educ. of Westside Community Schools v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 2372, 110 L.Ed.2d 191 (1990)).

■ The Court recognized this as a factor in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), which is the only Supreme Court case since 1971 that has not applied the *Lemon* test to an Establishment Clause challenge. *Edwards,* 482 U.S. at 583 n. 4, 107 S.Ct. at 2577 n. 4. In *Marsh,* the Court upheld invocations delivered by chaplains at the beginning of legislative sessions. After examining the unique history underlying the practice of legislative prayers, the Court also noted that in the case before it, "the individual claiming injury by the practice is an adult, presumably not readily susceptible to 'religious indoctrination,' or peer pressure,...." 463 U.S. at 792, 103 S.Ct. at 3336 (citations omitted).

In many respects, the present matter is more akin to the legislative prayer upheld in *Marsh* than it is to a traditional "school prayer" case. Indeed, an invocation and benediction delivered at a graduation ceremony is "school prayer" only insofar as it is a school sponsored event that may or may not take place on school grounds. *Cf. Board of Educ. of Westside Community Schools v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 2370–73 & 2376, 110 L.Ed.2d 191 (Kennedy, J., concurring in the judgment) (1990) (upholding legislation that requires equal access to school premises for student religious groups). But it does not necessarily follow from this that a high school graduation ceremony solemnized by a brief prayer runs afoul of the Establishment Clause. "In each case, the inquiry calls for line-drawing" that will "depend[ ] on all the circumstances of a particular relationship." *Lynch v. Donnelly,* 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604 (1984).

Given the similarities between legislative prayer and an invocation at a high school graduation ceremony, an argument may be made that in this case the *Lemon* test should be abandoned in favor of the approach established by *Marsh.* This ratio-

nale was adopted in *Stein v. Plainwell Community Schools,* 822 F.2d 1406, 1409 (6th Cir.1987), where the court held that the Constitution would allow an invocation or benediction if it could pass muster under *Marsh.* Nonetheless, the court declines to adopt this approach for substantially the reason cited by plaintiff's counsel at the hearing: the "historical approach [of *Marsh* ] is not useful in determining the proper roles of church and state in public schools, since free public education was virtually nonexistent at the time the Constitution was adopted." *Edwards,* 482 U.S. at 583 n. 4, 107 S.Ct. at 2577 n. 4. *See also Lynch,* 465 U.S. at 686, 104 S.Ct. at 1366; *Allegheny,* 492 U.S. at 595 n. 46, 109 S.Ct. at 3102 n. 46; *Graham v. Central Community School Dist.,* 608 F.Supp. 531, 535 (S.D.Iowa 1985) ("The *Marsh* decision ... rests on the 'unique history' of legislative prayer, and the holding of that case is clearly limited to the legislative setting.").

The *Lemon* test was recently applied in *Jones v. Clear Creek Independent School Dist.,* 930 F.2d 416 (5th Cir.1991), where the Fifth Circuit upheld a school resolution allowing invocations and benedictions that were "nonsectarian and nonproselytizing in nature." As to the first element of *Lemon,* the court found that the resolution served the legitimate secular purpose of "solemnizing public occasions." 930 F.2d at 420. The court also found that this secular, solemnizing purpose was the primary effect of the resolution. *Id.* at 421–22. Finally, the court determined that school involvement, which was limited to "prescreen[ing] proposed invocations for sectarianism and proselytization," was not constitutionally excessive under the entanglement prong of *Lemon.*

The court finds the Fifth Circuit's analysis persuasive and fully applicable to the facts of this case. Concededly, an invocation and benediction will often, if not always, have a religious purpose. By definition, an invocation is a "prayer of entreaty," and a benediction is "the invocation of a blessing." *Webster's Ninth New Collegiate Dictionary* 143 & 637 (1990). The first prong of the *Lemon* test, how-

ever, requires that state action have "a" secular purpose. It does not require that the purpose be *only* secular. Thus, although the Court has invalidated state action that "does not have a clearly secular purpose" or that "is entirely motivated by a purpose to advance religion," state action "that is motivated *in part* by a religious purpose may satisfy the first criterion [of *Lemon* ]." *Wallace,* 472 U.S. at 56, 105 S.Ct. at 2489 (citations omitted; emphasis added). *See also Lynch,* 465 U.S. at 680, 104 S.Ct. at 1362.

■ The proposed invocation and benediction for the graduation exercises of North High School are both nonsectarian and nonproselytizing in. content. They serve the secular purpose of solemnizing this occasion. Under these circumstances, the purpose of any appeal to a "ceremonial deism" is merely to evoke a sentiment and spirit that—as recognized by Justice Brennan—cannot adequately be captured by nonreligious phrases. *Lynch,* 465 U.S. at 716–17, 104 S.Ct. at 1381–82 (Brennan, J., dissenting); *Jones,* 930 F.2d at 420.

Similarly, the court finds that the invocation and benediction will not have the primary effect of advancing religion. As the Supreme Court has recognized in its Christmas creche cases, the state may associate itself even with symbols that are unmistakably religious if the context of the association does not endorse religion in a way that establishes or tends to establish a religion. *Lynch,* 465 U.S. at 678, 104 S.Ct. at 1361; *County of Allegheny v. ACLU,* 492 U.S. 573, 592–94, 109 S.Ct. 3086, 3100–01, 106 L.Ed.2d 472 (1989). These cases may be understood to acknowledge that certain practices, although religious in their origins, are so entrenched in our national traditions and habits that they have assumed a secular purpose. That these same practices retain their religious and devotional significance for those who are inclined to observe them does not diminish their primary secular purpose in the proper setting. In the context of a graduation ceremony for high school seniors, the court finds that nonsectarian references to the deity serve to endorse neither a particular religion nor

religion in general. Such practices have, in effect, passed into "the American civil religion." *Stein,* 822 F.2d at 1409. The proposed invocation and benediction satisfy the second prong of *Lemon.*

Finally, the facts of this case do not suggest any excessive "entanglement" of state and religion. The policy of the school principal merely allows students to compose and present the invocation and benediction—subject only to a review by the principal for sectarianism or proselytization.

The court is aware that this decision is not in accord with those of all jurisdictions, and that the issue of this case is currently before the United States Supreme Court on review of a decision that found an Establishment Clause violation under similar facts. *See Weisman v. Lee,* 728 F.Supp. 68 (D.R.I.), *aff'd,* 908 F.2d 1090 (1st Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991). *Accord Sands v. Morongo Unified School Dist.,* 53 Cal.3d 863, 281 Cal.Rptr. 34, 809 P.2d 809 (1991); *Lundberg v. West Monona Community School Dist.,* 731 F.Supp. 331, 341–46 (N.D.Iowa 1989); *Graham v. Central Community School Dist.,* 608 F.Supp. 531 (S.D.Iowa 1985); *see also Doe v. Aldine Independent School Dist.,* 563 F.Supp. 883 (S.D.Tex.1982) (striking down the recitation or singing of school prayer). Nonetheless, the court believes that its ruling is consistent with controlling Supreme Court precedent—a conclusion supported by the opinions of several other jurisdictions. *See Jones, supra; Stein v. Plainwell Community Schools,* 822 F.2d 1406 (6th Cir.1987); *Albright v. Board of Education,* 765 F.Supp. 682 (D.Utah 1991); *Grossberg v. Deusebio,* 380 F.Supp. 285 (E.D.Va.1974); *Wood v. Mt. Lebanon Township School Dist.,* 342 F.Supp. 1293 (W.D.Pa.1972).

### III. *Conclusion*

For the foregoing reasons, the court finds that the proposed invocation and benediction do not violate the Establishment Clause.

Accordingly, the court hereby denies plaintiff's motion (Doc. 2) for temporary

restraining order and preliminary injunction.

IT IS SO ORDERED.