HATCHETT, Chief Judge:
Appellants, students of various grade levels in the Duval County, Florida school system, challenge the Duval County school system’s policy of permitting graduating students to vote on whether to have unrestricted student-led messages at the beginning and closing of graduation ceremonies as facially and as-applied violative of the Establishment Clause. We hold that this policy facially violates the Establishment Clause, reverse the district court’s denial of appellants’ motion for preliminary injunction and dismissal on the merits and remand for further proceedings consistent with this opinion.
I. BACKGROUND
Prior to 1993, public schools in Duval County, Florida, permitted religious officials to conduct formal prayers during graduation exercises. The Supreme Court, however, ruled in 1992 that school-sponsored prayer at public school graduation ceremonies violated the Establishment Clause. Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). Following Lee, Duval County Public School Superintendent Larry Zenke, at the direction of Vicky Reynolds (the school system’s Liaison for Legal Affairs), issued a memorandum instructing all school officials in the Duval County school system to end the practice of having prayer at graduation ceremonies.[1]
Soon after issuing this memorandum, the school system began receiving input from students and members of the community regarding ways to continue prayer at graduation ceremonies despite the Lee decision.[2] Reynolds and Superintendent *1239 Zenke met to decide whether they could change the school system’s policy of no prayer at graduation ceremonies because of this input and the Fifth Circuit’s decision in Jones v. Clear Creek Indep. Sch. Dist., 977 F.2d 963 (5th Cir.1992), cert. denied, 508 U.S. 967, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993). Thereafter, Reynolds, under the supervision of Superintendent Zenke, circulated the •following memorandum dated May 5, 1993, referenced “Graduation Prayers,” to all high school principals in the Duval County school system:
You will recall that after the 1992 Supreme Court case of Lee v. Wiseman, [sic] you received a memorandum from me instructing that because of the decision, we would no longer be able to have prayers at graduation ceremonies. Most of you have recently been bombarded with information, as have I, regarding whether or not student initiated and led prayers are acceptable based upon a recent Fifth Circuit opinion. The purpose of this memorandum is to give you some guidelines on this issue if the graduating students at your school desire to have some type of brief opening and/or closing message by a student. This area of the law is far from clear at this time, and we have been threatened by lawsuits from both sides on the issue depending on what action we take. The key to the Lee v. Wiseman [sic] decision was that the prayer given at that graduation ceremony was directed and initiated by the school system, which made it unconstitutional, rather than by permissive student choice and initiative. With that premise in mind, the following guidelines may be of some assistance:
1. The use of a brief opening and/or closing message, not to exceed two minutes, at high school graduation exercises shall rest within the discretion of the graduating senior class;
2. The opening and/or closing message shall be given by a student volunteer, in the graduating senior class, chosen by the graduating senior class as a whole;
3. If the graduating senior class chooses to use an opening and/or closing message, the content of that message shall be prepared by the student volunteer and shall not be monitored or otherwise reviewed by Duval County School Board, its officers or employees;
The purpose of these guidelines is to allow the students to direct their own graduation message without monitoring or review by school officials.
After issuance of this memorandum, the Duval County School Board met to decide whether they could adopt a policy allowing a “moment of silence” at graduation ceremonies. In their discussion of the “moment of silence” policy, the School Board members also discussed the guidelines set forth in the Reynolds memorandum, and the permissibility of prayer at graduation *1240 ceremonies. The School Board voted the “moment of silence” policy down, in part to allow the guidelines in the Reynolds memorandum to stand, and in part based upon their understanding of Wallace v. Jaffree, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985).[3] The School Board never voted specifically on the guidelines set forth in the Reynolds memorandum; “that memorandum was left in force with the acquiescence or tacit approval of the Board as its official policy governing the 1993 commencement exercises.” Adler v. Duval County Sch. Bd., 851 F.Supp. 446, 449 (M.D.Fla.1994) {Adler I).
High school principals in Duval County thereafter began implementing the guidelines in the Reynolds memorandum through delegating decision-making authority to graduating senior students at each school to determine: (1) whether they should allow student messages at the opening and/or closing of the graduation ceremony; and (2) who should give these messages. See Adler I, 851 F.Supp. at 449 n. 4 (describing how each individual school delegated this decision-making authority). With regard to the 1993 graduation ceremonies, seniors at 10 of the 17 Duval county high schools opted for messages that constituted various forms of religious prayer. The seniors at the remaining 7 schools opted either for no message or for messages that were entirely secular. As the parties have not had the opportunity to develop the record fully for graduation ceremonies following 1993, it is unclear how subsequent graduating classes conducted the message portions of their grad *1241 uation ceremonies.[4]
II. PROCEDURAL HISTORY
In June 1993, various Duval County-public school students sued the Duval County school system, alleging that the policy embodied in the Reynolds memorandum constituted an establishment of religion and infringed on their free exercise of religion. These students sought equitable relief through a judgment that declared the policy unconstitutional and enjoined the Duval County School Board from permitting prayers at high school graduation ceremonies, and additionally sought money damages.[5] The students also sought to certify their action as a class action. The district court denied the motion to certify the class and granted summary judgment in favor of the Duval County school system, holding that its policy was constitutional. See Adler I, 851 F.Supp. at 451-56. The students appealed, and a panel of this court found that because the students had all graduated, their claims for declaratory and injunctive relief were moot. See Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477-78 (11th Cir.1997) (Adler II). The Adler II court also held that the students waived their damages claim on appeal. See Adler II, 112 F.3d at 1480-81.
Appellants brought the instant action in May 1998 against the Duval County school system, again alleging that the policy embodied in the Reynolds memorandum constituted an establishment of religion and infringed on their free exercise of religion.[6] Appellants sought preliminary and permanent injunctive relief against the Duval County School Board from permitting, conducting or sponsoring any religious exercises, prayer and instruction within the Duval County Public School’District, including School Board-sponsored graduation ceremonies. Appellants also sought monetary damages and class certification. The district court, at the hearing on appellants’ motion for a preliminary injunction, advanced the case on the merits because the action “presents precisely the same claims predicated upon the same constitutional theories or contentions [as Adler I]; and ... counsel stipulated that the operative facts remain unchanged.” Adler v. Duval County Sch. Bd., No. 98-460-CIV-J-10C (M.D.Fla. May 27, 1998). The district court denied appellants’ motion for preliminary injunction and entered final judgment in favor of the Duval County School Board, holding that the law had not evolved in appellants’ favor and that high school graduation ceremonies were designated, limited public fora.
III. ISSUE
The issue we discuss is whether the Duval County school system’s policy of permitting graduating students to vote to have unrestricted student-led messages at the beginning and closing of graduation ceremonies is facially violative of the Establishment Clause.[7]
*1242 IV. DISCUSSION

A. Framework of Analysis

The Establishment Clause of the First Amendment states that “Congress shall make no law respecting an establishment of religion.... ” . U.S. Const. Amend. I.[8] The first problem that we must confront is the framework of analysis to use in determining whether a policy that permits students to vote on whether to have uncensored student-led messages at public school graduations violates the Establishment Clause. The long-established three-prong test for analyzing Establishment Clause challenges enunciated in Lemon v. Kurtzman provides that to survive an alleged violation of the Establishment Clause, the challenged statute or policy must: (1) have a secular purpose; (2) have a principal or primary effect that neither advances nor inhibits religion; and (3) not foster excessive entanglement with religion. See 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In Lee v. Weisman, the Court declined to apply the Lemon test in holding that a policy of school-sponsored prayer at public school graduation violated the Establishment Clause, and instead found that the following “dominant facts” controlled their decision: (1) state officials directed the performance of a formal religious exercise at graduation ceremonies; and (2) even for those students who objected to the religious exercise, their attendance and participation in the state-sponsored religious activity “are in a fair and real sense obligatory, though the school district does not require attendance as a condition for receipt of the diploma.” See Lee, 505 U.S. at 586, 112 S.Ct. 2649.
Members of the Court and other commentators have questioned the continued vitality of the Lemon test.[9] In Lamb’s Chapel v. Center Moriches Sch. Dist., the Court stated that it had not overruled Lemon. 508 U.S. 384, 395 n. 7, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (“we return to the reality that there is a proper way to inter an established decision and Lemon, however frightening it might be to some, has not been overruled.”). Additionally, the en banc court in Chabad-Lubavitch of Georgia v. Miller held that “although [Lemon] has been criticized severely, it still controls our Establishment Clause inquiry.” 5 F.3d 1383, 1388 (11th Cir.1993) (en banc); see also Bown v. Gwinnett County Sch. Dist., 112 F.3d 1464, 1468-74 (11th Cir.1997) (applying Lemon). Thus, we will conduct our Establishment Clause inquiry of the Duval County school system’s policy under both Lee and Lemon. As the district court’s final order for our *1243 review concludes that Adler I, granting summary judgment in favor of Duval County, remained the proper decision, we review this case de novo. See Taylor v. Food World, Inc., 138 F.3d 1419, 1422 (11th Cir.1998). We also take note of the Court’s warning that “the constitutional rights of children ... can neither be nullified openly and directly by [the] state ... nor nullified indirectly by [it] through evasive schemes ... whether attempted ‘ingeniously or ingenuously.’ ” Gilmore v. City of Montgomery, 417 U.S. 556, 568, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974) (quoting Cooper v. Aaron, 358 U.S. 1, 17, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958)).

B. Lee v. Weisman

In Lee v. Weisman, the Court analyzed the policy of the public school system in Providence, Rhode Island, that permitted school principals to invite members of the clergy to offer invocation and benediction prayers at formal graduation ceremonies for middle and high schools. See Lee, 505 U.S. at 580, 112 S.Ct. 2649. In particular, the principal at Nathan Bishop Middle School invited a rabbi to offer the invocation and benediction at the school’s graduation ceremony in 1989. The principal provided the rabbi with a pamphlet entitled “Guidelines for Civic Occasions” that the National Conference of Christians and Jews had prepared and advised the rabbi that the prayer should be nonsectarian. See Lee, 505 U.S. at 581, 112 S.Ct. 2649. The Court found that the school held the graduation on its premises, the students “enter as a group in a processional, subject to the direction of teachers and school officials, and sit together, apart from their families,” and that the students “stood for the Pledge of Mlegiance and remained standing during the rabbi’s prayers.” Lee, 505 U.S. at 583, 112 S.Ct. 2649.
The Court ruled that this policy of permitting prayer at public school graduation ceremonies was unconstitutional under the Establishment Clause, stating:
These dominant facts mark and control the confines of our decision: State officials direct the performance of a formal religious exercise at promotional and graduation ceremonies for secondary schools. Even for those students who object to the religious exercise, their attendance and participation in the state-sponsored religious activity are in a fair and real sense obligatory, though the school district does not require attendance as a condition for receipt of the diploma.
Lee, 505 U.S. at 586, 112 S.Ct. 2649. The high school principal’s involvement in composing and directing a formal prayer exercise led the Court to hold the prayer “bore the imprint of the state” and to conclude that the state’s involvement in the prayer created a “state-sponsored and state-directed religious exercise in a public school.” Lee, 505 U.S. at 587, 590, 112 S.Ct. 2649. Thus, for purposes of our analysis under Lee, we shall examine: (1) the state’s control of the graduation ceremonies; and (2) the student’s coerced participation in the graduation ceremonies.

1. State Control

The overriding issue in this case is whether the Duval County school system’s policy, which allows graduating students to vote on the decision whether to have unrestricted opening and closing messages that students deliver at graduation ceremonies, effectively dissociates any prayer that may occur at the graduation ceremonies from the state’s control. Although this case is distinguishable from Lee, where high school principals chose a member of the clergy to deliver a prayer, the fact that the entanglement is less obvious or intrusive does not save the school system’s policy from a facial violation of the Establishment Clause.[10] Our review of Lee and cases *1244 from other circuits leads us to the conclusion that the delegation of the decision regarding a “prayer” or “message” to the vote of graduating students does not erase the imprint of the state from graduation prayer. Further, the Duval County school system developed this policy as an attempt to circumvent Lee and continue the practice of prayer, and to permit sectarian and proselytizing prayer, at graduation ceremonies.
The Duval County school system exerted tremendous control over the graduation ceremonies, in that the individual schools and the School Board: rented the facilities for the graduation; told the graduating students what they should wear; decided when the graduating students and audience could sit and stand; decided the sequence of events at the graduation; and designed and printed the program for the ceremonies. As the Lee Court observed, “[a]t a high school graduation, teachers and principals must and do retain a high degree of control over the precise contents of the program, the speeches, the timing, the movements, the dress, and the decorum of the students.” Lee, 505 U.S. at 597, 112 S.Ct. 2649. The individual schools’ decisions not to censor the messages that the elected students gave at the beginning and' closing of the graduation ceremonies fails to erase the overwhelming control that the schools exerted over the remainder of the graduation ceremony. In fact, students decided whether to have a message at graduation and who to deliver that message “only because school officials agreed to let them decide that one question.” American Civil Liberties Union of New Jersey v. Black Horse Pike Reg’l Bd. of Educ., 84 F.3d 1471, 1479 (3d Cir.1996) (en banc).
The Ninth Circuit in Doe v. Madison Sch. Dist. No. 321 analyzed a school district’s policy that permitted a school to invite four students, according to their academic class standing, to speak at their graduation ceremony, with the school administration barred from editing or censoring the students’ remarks. See 147 F.3d 832, 834 (9th Cir.1998). The Doe court held that the policy was distinguishable from Lee:
First, students — not clergy — deliver the presentations. Second, these student-speakers are selected by academic performance, a purely neutral and secular criterion. Third, once chosen, these individual students have autonomy over content; the school does not require the recitation of a prayer, but rather leaves it up to the student whether to deliver “an address, poem, reading, song, musical presentation, prayer, or any other pronouncement.”
Doe, 147 F.3d at 835. The Doe court took note of Justice Souter’s concurring opinion in Lee, that two other Justices had joined, which stated:
If the State had chosen its graduation day speakers according to wholly secular criteria, and if one of those speakers (not a state actor) had individually chosen to deliver religious message, it would have been harder to attribute an endorsement of religion to the State.
Doe, 147 F.3d at 835 (quoting Lee, 505 U.S. at 630 n. 8, 112 S.Ct. 2649 (Souter, J„ concurring)). The court held that this policy survived Lee, for “when a state uses a secular criteria for selecting graduating speakers and then permits the speaker to decide for herself what to say, the speech does not bear the imprimatur of the State.” Doe, 147 F.3d at 836.
We find Doe to be distinguishable on two points. The Doe court relied on the neutral selection of student speakers on the basis of their academic standing and the school’s policy to permit those speakers to make a private choice about what to say. See Doe, 147 F.3d at 835 n. 5 (emphasizing the private character of any decision to pray or speak on religious topics through the graduation program’s printed disclaimer). This reasoning merely recognizes what the Court has made clear: “there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the *1245 Free Speech and Free Exercise Clauses protect.” Board of Educ. of Westside Community Sch. v. Mergens, 496 U.S. 226, 250, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (plurality opinion). What the Doe court did not decide, however, is the following question:
Can school boards allow students to decide by majority vote to have religious exercises at graduation? Such practice, as one commentator explained, creates a “danger that a majority will bring intimidating pressures to bear in favor of a particular religion,” a danger that is not present when a school chooses a speaker through a neutral method and allows her to speak freely.
Doe, 147 F.3d at 836 n. 7 (quoting Recent Case, 110 Harv. L.Rev. 781, 783 (1997)) (internal citations omitted). The Duval County policy permits graduating students to decide through majority/plurality vote whether a student volunteer shall give a message. Another distinguishing point is that the Duval County school system’s policy restricts these messages to no longer than two minutes at the beginning and closing of the graduation ceremony. The Doe policy does not reveal the sequence in which the four speakers spoke, but indicates that each of the four speakers spoke under the same circumstances. See Doe v. Madison Sch. Dist. No. 321, 7 F.Supp.2d 1110, 1112 (D.Idaho 1997), aff'd, 147 F.3d 832 (9th Cir.1998). The Duval County school system’s policy thus exerts more control over the student speakers.
The Third Circuit en banc in Black Horse Pike considered a policy that permitted students to vote on the direct question of whether to have prayer at their graduation ceremonies, and held that such a policy violated the Establishment Clause. 84 F.3d at 1477-88.[11] The Black Horse Pike court took particular offense to the requirement “to have us recognize a right in that plurality to [permit verbal prayer at graduation ceremonies], and ignore the right of others to worship in a different manner, or in no manner at all.” Black Horse Pike, 84 F.3d at 1477. Instead, the Black Horse Pike court held that “[a]n impermissible practice can not be transformed into a constitutionally acceptable one by putting a democratic process to an improper use.” Black Horse Pike, 84 F.3d at 1477; see also Board of Educ. of Kiryas Joel, 512 U.S. at 698-700, 114 S.Ct. 2481 (holding that the state cannot transform a practice that tends to establish religion into a secular one through delegating some aspect of the practice to non-governmental actors); Harris v. Joint Sch. Dist. No. 241, 41 F.3d 447, 455 (9th Cir.1994)' (“elected officials cannot absolve themselves of a constitutional duty by delegating their responsibilities to a nongovernmental entity.”), vacated as moot, 515 U.S. 1155, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995). As the Lee court stated, “[w]hile in some societies the wishes of the majority might prevail, the Establishment Clause of the First Amendment is addressed to this contingency and rejects the balance urged upon us.” Lee, 505 U.S. at 596, 112 S.Ct. 2649.
Although the policy that the Black Horse Pike court analyzed is distinguishable because the students voted on the direct question of prayer, its analysis of the policy’s attempt to dissociate prayer from the state’s imprint is persuasive. When we analyze the Duval County school system’s policy, we find evidence of the policy’s intent to permit prayer: (1) Reynolds and Superintendent Zenke originally instructed all schools to stop directing prayer at graduation ceremonies under Lee, and devised the current policy after pressure to develop a way to circumvent *1246 Lee’s prohibition of school-sponsored prayer at graduation ceremonies; (2) they entitled the memorandum embodying the policy “Graduation Prayers”; (3) the School Board voted down a moment of silence to permit these guidelines to remain in place; and (4) unlike a valedictory address, a two-minute “message” at the beginning or end of a graduation ceremony is more likely to result in prayer.[12] Thus, we find that the school system believed it could give a “wink and a nod” to controlling Establishment Clause jurisprudence through attempting to delegate to the majority/plurality vote of students what it could not do on its own — permit and sponsor sectarian and proselytizing prayer at graduation ceremonies. The Establishment Clause simply does not allow this. As the Court stated in West Virginia State Board of Educ. v. Barnette,
The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One’s ... fundamental rights may not be submitted to vote; they depend on the outcome of no election.
319 U.S. 624, 638, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).
We also consider these students state actors for Establishment Clause purposes. In Evans v. Newton, the Court held that the line between private and state action “is not always easy to determine” and that “[c]onduct that is formally ‘private’ may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed on state action.” 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). The Evans Court also explained that when the state permits private groups or individuals to exercise governmental functions, the group or individual then must be subject to constitutional limits. See Evans, 382 U.S. at 299, 86 S.Ct. 486; see also Burton v. Wilmington Parking Auth., 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (holding that when the state is a joint participant in the activity, the activity “cannot be considered to have been so ‘purely private’ as to fall without the scope of the Fourteenth Amendment”); Harris, 41 F.3d at 455 (“[w]hen the senior class is given plenary power over a state-sponsored, state-controlled event such as a high school graduation, it is just as constrained by the Constitution as the state would be.”). Accordingly, even the elected student speaker’s independent choice of a topic is a choice fairly attributable to the state and, just as a publically-elected school board president could not make a “private decision” to lead the public schools in a recitation of a prayer every morning, neither may the senior class’s elected representative make a private decision to do the same thing from the graduation podium. See, e.g., Berger v. Rensselaer Cent. Sch. Corp., 982 F.2d 1160, 1167 (7th Cir.) (“[ijmagine that the Gideons came to ... schools ... every morning to lead students in prayer. Is there any doubt that such morning prayers would be impermissible ... no matter that the prayers were led by non-school employees?”) (internal citations omitted), cert. denied, 508 U.S. 911, 113 S.Ct. 2344, 124 L.Ed.2d 254 (1993).
We also find the reliance of the district court and the Duval County school system upon the Fifth Circuit’s reasoning in Jones v. Clear Creek Indep. School Dist. to be unpersuasive. See Adler I, 851 F.Supp. at 456. The policy in Jones is similar to the one at bar, with the primary difference being that the Jones guidelines instructed that the invocation and benediction “shall be nonsectarian and nonproselytizing.” See Jones v. Clear Creek Indep. Sch. Dist., 930 F.2d 416, 417 (5th Cir.1991), vacated, *1247 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).[13] The Jones court held that the policy “does not unconstitutionally endorse religion if it submits the decision of graduation invocation content, if any, to the majority vote of the senior class.” Jones, 977 F.2d at 969. The court premised its holding on the idea that “a graduating high school senior who participates in the decision as to whether her graduation will include an invocation by a fellow student volunteer will understand that any religious references are the result of student, not government, choice.” Jones, 977 F.2d at 969. The district court in Adler I followed this reasoning, stating that “the participants clearly understand that the student messages are just that — student messages that are divorced entirely from any governmental or institutional sponsorship.” Adler I, 851 F.Supp. at 456. We disagree. Based on our analysis above, the state cannot erase its control over or endorsement of prayer at a public school graduation through delegation of one portion of the graduation ceremony to the majority/plurality vote of students. Further, we believe (as we shall discuss further in the “coerced participation” factor) that a reasonable student will not realize that student-elected sectarian and proselytizing prayerful messages at graduation ceremonies are divorced from state sponsorship and instead, realizing the views to be that of the majority, will feel coerced to participate in them.
Additionally, the Fifth Circuit clarified its Establishment Clause jurisprudence in Doe v. Santa Fe Indep. Sch. Dist., in which it held that a Jones graduation policy that did not contain the limitation that invocations and benedictions be nonsectarian and nonproselytizing violated the Establishment Clause. See Santa Fe, 168 F.3d 806, 816-17 (5th Cir.1999).[14] The court held that Jones “did not hold that a policy is insulated from constitutional scrutiny under the Establishment Clause merely because it permits, rather than requires, religious speech when selected and given by students,” and that the content restrictions were “central” to Jones’s holding. Santa Fe, 168 F.3d at 816-17. Although the Santa Fe court bypassed a formal Lee analysis, it held that
when the school “permits” sectarian and proselytizing prayers — which, by definition, are designed to reflect, and even convert others to, a particular religious viewpoint and which ... do not serve (and even run counter to) the permissible secular purpose of solemnizing an event — such “permission” undoubtedly conveys a message not only that the government endorses religion, but that it endorses a particular form of religion.
Santa Fe, 168 F.3d at 817-18. As the Duval County school system’s policy in fact “permits” sectarian and proselytizing prayers, it is therefore distinguishable from Jones and fits within Santa Fe’s holding. Further, Santa Fe holds that a school’s *1248 delegation to students the decision whether to have some type of “message” at a graduation ceremony does not insulate the school from constitutional scrutiny.
We hold that the state’s control over nearly all aspects of the graduation ceremony, and the choices of a student-elected representative, subjects the ceremony to the limits of the Constitution. We further hold that this policy does not dissociate student-initiated sectarian and proselytizing prayer at a school-controlled graduation ceremony from the imprint of the state under Lee, and that the state’s endorsement of the prayer subjects it to a facial violation of the Establishment Clause. Accordingly, we hold that the control that the Duval County school system exercised is sufficient to satisfy the state control “dominant fact” under Lee.

2. Coerced Participation

The second “dominant fact” under Lee is an easier issue. “It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise.... ” Lee, 505 U.S. at 587, 112 S.Ct. 2649. The Lee Court discussed coerced participation at a graduation ceremony as follows:
The undeniable fact is that the school district’s supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the invocation and benediction. This pressure, though subtle and indirect, can be as real as any overt compulsion.... But for the dissenter of high school age, who has a reasonable perception that she is being forced by the State to pray in a manner her conscience will not allow, the injury is not less real.
Lee, 505 U.S. at 593, 112 S.Ct. 2649. Because a student’s attendance at his or her graduation ceremony is “in a fair and real sense obligatory,” the Lee court held that students “had no real alternative which would have allowed [them] to avoid the fact or appearance of participation [in prayer].” Lee, 505 U.S. at 586, 588, 112 S.Ct. 2649. Additionally, “[t]he prayer exercises ... are especially improper because the State has in every practical sense compelled attendance and participation in an explicit religious exercise at an event of singular importance to every student, one the objecting student had no real alternative to avoid.” Lee, 505 U.S. at 598, 112 S.Ct. 2649.
The Duval County school system’s graduation policy, and the school’s control over the graduation ceremony, require students to remain silent and perhaps even stand for the duration of the message. Thus, because the school system devised this system so that prayer could occur at graduation ceremonies, this coerced participation violates the Establishment Clause. The Court stated in Engel that “[w]hen the power, prestige and financial support of government is placed behind a particular religious belief, the indirect pressure upon religious minorities to conform to the prevailing officially approved religion is plain.” Engel, 370 U.S. at 431, 82 S.Ct. 1261. Further, because the graduation speaker under the Duval County school system’s policy won an elective contest to speak, the audience is much more aware that the views expressed are those of the majority and, according to Lee, the audience faces even greater compulsion to participate. See, e.g., Black Horse Pike, 84 F.3d at 1481 (“[the First Amendment] is not a sword that can be used to compel others to join in a religious observance at a state sponsored event.”). The Lee Court emphasized the importance of graduation as a “onee-in-a-lifetime” event and that “[t]he Constitution forbids the State to exact religious conformity from a student as the price of attending her own high school graduation.” Lee, 505 U.S. at 596, 112 S.Ct. 2649. Thus, we hold that the Duval County school system’s policy coerces objecting students to participate in prayer, thereby satisfying Lee’s coerced participation “dominant fact.”

*1249
C. Lemon v. Kurtzman

We next analyze the Duval County school system’s policy under the three-prong Lemon test. Under Lemon, we must ask whether: (1) the Duval County school system had a secular purpose for adopting the policy; (2) the policy’s primary effect is one that neither advances nor inhibits religion; and (B) the policy does not result in an excessive entanglement of government with religion. See Lemon, 403 U.S. at 612-13, 91 S.Ct. 2105. The Duval County school system’s policy violates the Establishment Clause if it fails to meet any of these criteria. See Edwards v. Aguillard, 482 U.S. 578, 585, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987).

1. Secular Purpose

The first prong of the Lemon test requires us to determine whether the challenged policy has a “clearly secular purpose.” Wallace, 472 U.S. 38, 56, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). We must ask “whether [the] government’s actual purpose is to endorse or disapprove of religion.” Wallace, 472 U.S. at 56, 105 S.Ct. 2479 (internal quotations omitted); see also Lynch v. Donnelly, 465 U.S. 668, 690-91, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (“[secular purpose] is not satisfied, however, by the mere existence of some secular purpose, however dominated by religious purposes.”); Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1527 (11th Cir.1993) (“no legislative recitation of a supposed secular purpose can blind us to an enactment’s preeminent purpose.”) (internal quotations and citations omitted), cert. denied, 513 U.S. 807, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994). Although the policy’s purpose need not be exclusively secular, it must be sincere and not a sham. Edwards, 482 U.S. at 586-87, 107 S.Ct. 2573.
The appellants presented the following evidence to show that the Duval County school system’s policy did not have a clearly secular purpose: (1) the Duval County school system drafted this policy in response to community support for prayer at graduation ceremonies and as an attempt to “fish” for ways around Lee; (2) Reynolds entitled the memorandum that enunciated this policy “Graduation Prayer”; and (3) the comments of the School Board members evidence their intent that instead of a moment of silence, the individual schools should adopt the policy to permit graduating students to engage in prayer. In Jager v. Douglas County Sch. Dist., this court held that a policy that permits religious invocations at public high school football games “by definition servefs] religious purposes” and therefore does not have a secular purpose. See 862 F.2d 824, 829-30 (11th Cir.), cert. denied, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). The Jager decision dictates that when a public school policy’s actual purpose is religious — even intrinsically religious — the policy violates the secular purpose requirement under Lemon. See Jager, 862 F.2d at 830 (discussing cases that conclude that “an intrinsically religious practice cannot meet the secular purpose prong of the Lemon test”).
The district court erred in failing to follow Jager. See Adler I, 851 F.Supp. at 452 n. 8 (questioning the value of Jager). We hold that the policy, both on its face and based upon the history surrounding its inception, has an actual purpose to permit prayer — including sectarian and proselytizing prayer- — at graduation ceremonies. See Santa Fe, 168 F.3d at 817 (holding that a policy that permits sectarian and proselytizing prayers has “a purpose which is the antithesis of secular.”). In fact, prayers were the direct consequence of this policy, as the Duval County school system’s 1992 policy — that directly outlawed prayer — would have banned them. See Black Horse Pike, 84 F.3d at 1479-80 (“[t]he text of [the policy] was adopted in response to Lee. The Board’s avowed purpose in reexamining its policy was to provide an option that might allow the ‘longstanding tradition’ of graduation prayer to survive the prohibitions of that Supreme Court decision.”). Thus, the policy violates the secular purpose requirement under Lemon. See Jaffree v. Wallace, 705 F.2d *1250 1526, 1534 (11th Cir.1983) (“[r]ecognizing that prayer is the quintessential religious practice implies that no secular purpose can be satisfied.”), aff'd, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985).
We also take exception with the district court’s conclusion that graduation ceremonies are “designated, limited public fora.” Adler I, 851 F.Supp. at 454. The district court held that
[traditionally, the ceremonies are held at the coliseum, away from the school campuses, and virtually the entire program is given over to public speech making by the valedictorian and other leaders of the graduating class, and by community leaders who are invited to give the principal commencement address.
Adler I, 851 F.Supp. at 454. We agree with the Black Horse Pike court that “[h]igh school graduation ceremonies have not been regarded, either by law or tradition, as public fora where a multiplicity of views on any given topic, secular or religious, can be expressed and exchanged.” Black Horse Pike, 84 F.3d at 1478; see also Doe, 147 F.3d at 838 (“the graduation ceremony is not a public forum”). The individual schools exert great control over the graduation ceremonies and the policy did not broaden the right of students to speak at the graduation ceremonies. Instead, only students that the majority selected could give a brief opening and closing message. “No matter what message a minority of students may wish to convey, the graduation forum is closed to them.” Harris, 41 F.3d at 457. Because the graduation ceremony is not a public forum, we hold that the district court’s reliance on public forum cases — and their corresponding requirement of strict scrutiny review— is incorrect.[15]

2. Primary Effect

Even if we assume that the Duval County school system’s policy survives the first Lemon prong, we also hold that the policy is facially unconstitutional because it fails the primary effect prong. The primary effect prong requires us to ask “whether, irrespective of [the] government’s actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [of religion].” Wallace, 472 U.S. at 56 n. 42, 105 S.Ct. 2479 (quoting Lynch, 465 U.S. at 690, 104 S.Ct. 1355). We must use the viewpoint of *1251 the “reasonable observer” to determine if the principal or primary effect of the policy is one “that neither advances nor inhibits religion.” Lemon, 403 U.S. at 612, 91 S.Ct. 2105. In undertaking this analysis, we must also be mindful that this consideration is especially important in the context of public schoolchildren. See Edwards, 482 U.S. at 583-84, 107 S.Ct. 2573.
The primary effect of the Duval County school system policy is to permit prayer at graduation ceremonies. Before 1992, schools in Duval County coordinated prayer at graduation ceremonies. After Lee, Superintendent Zenke and Reynolds instructed schools no longer to permit prayer at their graduation ceremonies. After pressure from the community and the Fifth Circuit’s Jones decision, Superintendent Zenke and Reynolds released a memorandum entitled “Graduation Prayer” that permitted students to decide through majority/plurality vote whether to have student-led “messages” at the beginning and closing of graduation ceremonies. In 1992, 10 of the 17 graduation ceremonies had student prayer. A reasonable observer at a graduation ceremony would believe that the “Graduation Prayer” policy conveys an endorsement of prayer — as the schools in the Duval County school system did openly prior to 1992 — which advances religion. See Jaffree, 705 F.2d at 1534-35 (“[t]he primary effect of prayer is the advancement of one’s religious beliefs.”); Santa Fe, 168 F.3d at 818-19 (holding that school’s permitting sectarian and proselytizing prayers “undoubtedly conveys a message not only that the government endorses religion, but that it endorses a particular form of religion.”). Further, the policy can place those attending graduation ceremonies “in the position of participating in a group prayer,” which also violates the primary effect prong of Lemon. See Jager, 862 F.2d at 831.

8. Entanglement

Because the policy clearly fails the first two prongs of Lemon, we need not engage in an analysis of Lemon’s third “entanglement” prong.
V. CONCLUSION
Based on the foregoing, we hold that the Duval County school system’s policy of permitting graduating students to decide, through majority/plurality vote, whether to have student representatives give unrestricted messages at the beginning and closing of graduation ceremonies facially violates the Establishment Clause under Lee and Lemon. Therefore, we reverse the district court’s judgment in favor of appellees, and we remand this case so that: (1) appellants can pursue discovery on the events at graduations after 1993 for their as-applied challenge and damages; (2) the district court may consider the motions of intervenors; and (3) the district court may undertake further proceedings consistent with this opinion.[16]
REVERSED and REMANDED.

. The memorandum (dated July 22, 1992) read, "This memorandum is to remind you that due to the recent Supreme Court Ruling in Lee v. Weisman, there should be no prayer, benediction, or invocation at any graduation ceremonies.”

. For example, Calvin Carr, the High School Director for First Baptist Church in Jacksonville, wrote the following letter (dated March 3, 1993) to Reynolds:
Thank you for being patient with me as I continue to "fish” for ways to incorporate prayer in our graduation ceremonies. I want you to know that I see it as a tragedy to allow one year to go by without having prayers — something that's been done in our country for over one hundred years.
I am enclosing a copy of a bulletin that has been published from the Center for American Law and Justice. In that publication they allege that the Lee vs. Weisman case *1239 only stops school officials from inviting clergy to give prayers. Evidently Justice Kennedy made it clear for the majority that the court's decision was limited to the particular facts before the court (id. at 2655). Thus, any change from the factual situation presented in Lee might alter the resulting opinion of the court.
Also, it points out that one Federal Appeals Court has already ruled that a majority of students can do what the state acting on its own cannot do to incorporate prayer in public school graduation ceremonies. Vicky, I’m not trying to be a ''stick-in-the-mud.” I just want to find a legal way our young people can have prayer at their graduations. It is going to be a sad day when we wipe them out of Duval County. Please help me to understand these rulings in this bulletin and I greatly appreciate your concern and help.
Other evidence of this community pressure includes a memorandum that Reynolds circulated entitled "Legal Opinion-Graduation Prayer” to Duval County School Board Members that stated:
For about a month my office has been receiving calls from principals asking for guidance as to the status of prayers at graduation. Students and parents had been informing them that there had been a change in the status due to a recent Court case and that student-led and initiated prayer was now acceptable.

. At the June 1, 1993 meeting in which the School Board considered the "moment of silence” policy, the School Board members voted the policy down 4-3. The comments of those School Board members that opposed the moment of silence, however, show that their intention in denying a moment of silence was to permit the individual schools to utilize the guidelines from the Reynolds memorandum.
Parker: But in good conscience I cannot vote to allow our '93 graduating class to have a few minutes of silent meditation when we all know that in the past some one has prayed out loud to thank the Lord for the 12 great and successful years in school during this period of time. And now we want silence.... I think that our school principals should be allowed to work out a non-sectarian message with our student chaplains, or a guest minister, rabbi or whatever that would be acceptable to all at this very important time in our young people's lives.
Buckley: If we leave it [the Reynolds memorandum] as it is we have not told anybody to do anything or prevented them from doing anything. And that’s what I feel we should do. If we pass this motion as it is on the floor we are putting ourselves into it and saying you shall not pray. You shall have a moment of silent meditation and therefore we are injecting ourselves into what is happening at graduation. And I think the only way we can keep ourselves clear on this thing is to keep ourselves out of what happens in this area of the graduation ceremony.
Corwin: God is not going away. Neither is our godly heritage for which American patriots sacrificed their lives and fortune from the time of the American revolution through Desert Storm. Americans who believe this have rights, too. The free public education system in America is based on the principles of good citizenship. I truly believe that this Board is dedicated to the premise that acceptable standards of conduct be formed in our students including self respect and respect for others regardless of race or religion. I also believe that the democratic process in which seniors were given the ability to choose which form of inspirational message, if any, they wanted at their commencement was an appropriate one and I’m going to stand by it. Jordan: In 1962, the Bible went out of the school and in 1992-93 the bullets come in. You don't have to be a brain surgeon to figure out that where we're going in America, black and white, rich and poor, Hispanics, Asians, what have you, our security is threatened. There is an old saying if you like what you’re getting, keep doing what you’re doing. And how long is it going to be before someone challenges that the class of '93 is unconstitutional because the class of '93 is named after the year of our Lord, 1993? Now how absurd are we going to take these special interest groups that are fanning their particular agenda at the expense of the best interest of this country? Mr. Chairman, I plan to vote for the administration plan and against the proposal that’s on the table.

. Appellants have submitted the programs from Duval County High School graduations for years subsequent to 1993. Some of these programs indicate that student "leaders” or "chaplains” gave "messages,” "invocations” and "benedictions” at these ceremonies.

. These "original” plaintiffs consisted of the following students: Emily Adler, Laura Jaffa and Robin Zion. Robin Rand later joined the action.

. Appellants in the instant action include: Emily Adler, a June 1998 graduate of Mandarin High School; Seth Finck, a June 1998 graduate of Stanton College Preparatory School; Stella Finck, as mother of Rachel Finck, planning to graduate from Stanton College Preparatory School in 1999, Aai'on Finck, planning to graduate from Stanton College Preparatory School in 2000 and Du-val County Public School student Benjamin Finck; Roberta Nord, mother of Duval County Public School Students Lucy Nord, age 9 and Tyler Hurley, age 12; and Jonathon Rand, a June 1998 graduate of Stanton College Preparatory School.

. Appellants also allege that the district court abused its discretion in consolidating the merits of their claim with the hearing on their motion for preliminary injunction. As appellants consented to this consolidation, we find no abuse of discretion.

. The Establishment Clause applies to the states through the Fourteenth Amendment. See Everson v. Board of Educ. of Ewing, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947); Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). As long as state action is present, a lack of statutory authorization does not limit the reach of the Establishment Clause. See Jager v. Douglas County Sch. Dist., 862 F.2d 824, 828 n. 7 (11th Cir.), cert. denied, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989).

. See, e.g., Board of Educ. of Kiryas Joel v. Grumet, 512 U.S. 687, 721, 114 S.Ct. 2481, 129 L.Ed.2d 546(1994) (O’Connor, J., concurring) ("the slide away from Lemon’s unitary approach is well under way.”); Lee, 505 U.S. at 587, 112 S.Ct. 2649 ("[w]e can decide the case without reconsidering the general constitutional framework by which public schools’ efforts to accommodate religion are measured. Thus, we do not accept the invitation ... to reconsider our decision in Lemon v. Kurtzman.”); Allegheny v. American Civil Liberties Union, 492 U.S. 573, 655-56, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (Kennedy, J., concurring in part and dissenting in part) (questioning the Court’s continued adherence to the Lemon test); Wallace v. Jaffree, 472 U.S. 38, 112, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (Rehnquist, J., dissenting) (stating that the Lemon test "has no basis in the history of the amendment it seeks to interpret, is difficult to apply and yields unprincipled results.”); Kent Greenwald, Quo Vadis: The Status and Prospects of “Tests" Under the Religion Clauses, 1995 Sup.Ct. Rev. 323, 361 (1996) ("now that Lemon lacks any defenders on the Court, other judges would perform a shallow exercise were they to continue to apply its terms. They should recognize that the Supreme Court has definitely abandoned Lemon.").

. In Engel v. Vitale, the Court spoke of less direct state control for Establishment Clause purposes:
The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce nonob-serving individuals or not.
370 U.S. 421, 430, 82 S.Ct. 1261 (1962).

. The policy, in pertinent part, allowed for prayer under the following conditions:
1. The Board of Education, administration and staff of the schools shall not endorse, organize or in any way promote prayers at school functions.
2. In the spirit of protected speech, the pupils in attendance must choose to have prayer conducted. Such prayer must be performed by a student volunteer and may not be conducted by a member of the clergy or staff.
Black Horse Pike, 84 F.3d at 1475.

. The Adler I court realized that messages at the opening and closing of a graduation ceremony would likely lead to prayer when it stated that "[(Invocations and benedictions have been traditional and are therefore familiar if not expected at high school graduation ceremonies." Adler I, 851 F.Supp. at 453 n. 9.

. The other major differences between the two policies are that: (1) the Jones policy referred to "invocations” and "benedictions,” while the Duval County policy referred to "opening and closing messages”; and (2) the senior class principal in Jones had the power to advise and counsel the senior class. Jones, 930 F.2d at 417.

. The Santa Fe court also held that a policy of prayer at high school football games also violated the Establishment Clause. See Santa Fe, 168 F.3d at 811-12. The graduation ceremony policy that the court reviewed is as follows:
The board has chosen to permit the graduating senior class, with the advice and counsel of the senior class principal or des-ignee, to elect by secret ballot to choose whether an invocation and. benediction shall be a part of the graduation exercise. If so chosen, the class shall elect by secret ballot, from a list of student volunteers, students to deliver invocations and benedictions for the purpose of solemnizing their graduation ceremonies.
See Santa Fe, 168 F.3d at 811-12. The policy also had a "fallback,” which provided that if a court enjoins the school district from enforcing the policy, then it would utilize the nonsectarian and nonproseltyzing limitation. See Santa Fe, 168 F.3d at 812.

. The Adler I court relied upon Chabad-Lubavitch, a case in which the en banc court reversed the denial of a group's request to erect a menorah in the Rotunda of Georgia’s Capitol Building. See Chabad-Lubavitch, 5 F.3d at 1385-86. The court specifically found that "[o]ver the past decade, Georgia has opened the Rotunda to Georgia's citizenry for their expressive activities both secular and religious in nature.” Chabad-Lubavitch, 5 F.3d at 1386. The Chabad-Lubavitch court was careful to distinguish itself from Jager, because "Jager involved state-sponsored religious speech in a non-public forum; quite different from the private religious speech in a public forum in the instant case." Chabad-Lubavitch, 5 F.3d at 1393 n. 16. A high school graduation ceremony is not “open” to its participants for expressive activity, and the policy's permitting two elected student representatives to give a message does not transform the graduation ceremony into a designated public forum. See also Arkansas Educ. Television Comm. v. Forbes, 523 U.S. 666, 118 S.Ct. 1633, 1642, 140 L.Ed.2d 875 (1998) (“[a] designated public forum is not created when the government allows selective access for individual speakers rather than general access for a class of speakers.”). We also hold that a public school graduation ceremony is not a “limited public forum,” because limited public forums "are those areas that the government has created for use by the public as places for expressive activity.” Gay Lesbian Bisexual Alliance v. Pryor, 110 F.3d 1543, 1548 (11th Cir.1997) (citing Perry Educ. Ass’n. v. Peiry Ixtcal Educators’ Ass’n., 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)); see also Santa Fe, 168 F.3d at 821 ("even though the government may designate a forum only for particular speakers or for the discussion of particular topics ... [the school district's] restrictions so shrink the pool of potential speakers and topics that the graduation ceremony cannot possibly be characterized as a public forum — limited or otherwise — at least not with fingers crossed or tongue in cheek.”). The Duval County school system did not establish its graduation ceremonies for public use; instead, it chose all of the speakers except the elected student(s).

. For purposes of the appellants' as-applied challenge on remand, we direct the district court to consider, along with newly-discovered evidence, the record evidence of school-directed prayer at graduation ceremonies. The limited record shows that many of the programs from school graduations indicate that “chaplains" gave "invocations” and "benedictions” during which the graduation programs directed the audience to stand. Additional record evidence shows that speakers at some of the graduation exercises were not selected using wholly secular criteria and students voted directly on the question of whether to have prayer at graduation ceremonies. In some instance, a faculty member delivered a prayer. Evidence of this sort clearly violates Lee.